UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------x
CERTAIN UNDERWRITERS AT
LLOYD'S LONDON, et al.,

               Plaintiffs,        **MEMORANDUM AND ORDER**

-against-                          14-CV-04717 (FB) (CLP)

NATIONAL RAILROAD PASSENGER
CORPORATION, et al.,

               Defendants.
---------------------------------------------------x

*Appearances:*
| For the Plaintiffs: | For the Defendants: |
|---|---|
| MARK J. LEIMKUHLER, ESQ. | DAVID L. EKLIND, ESQ. |
| 1899 Pennsylvania Ave., NW, Suite 600 | 1152 15th St., NW |
| Washington, D.C. 20006 | Washington, D.C. 20005 |

**BLOCK, Senior District Judge:**

      On August 8, 2014, Plaintiffs Certain Underwriters at Lloyd's, London and Certain London Market Companies (collectively, "London Market Insurers" or "LMI") commenced this declaratory judgment action against Defendant National Railroad Passenger Corporation ("Amtrak") and dozens of companies that insured Amtrak to determine the parties' rights and obligations in connection with liability insurance policies issued to Amtrak between 1972 and 1986. On August 11, 2014, Amtrak filed a competing action in the United States District Court for the District of Columbia ("D.C. Action").[1] Amtrak now moves to transfer this action to the District

---

[1] Amtrak has agreed to dismiss the D.C. Action if the Court denies its transfer motion.

of Columbia pursuant to 28 U.S.C. § 1404(a). For the reasons that follow, Amtrak's motion is denied.

**I.**

Amtrak – a corporation headquartered in Washington, D.C. – has functioned as the United States' national rail operator since 1971. Amtrak's nationwide operations have resulted in myriad environmental damage and bodily injury claims (collectively, "Liability Claims") against it. From 1972 to 1986, Amtrak had insurance policies with various insurers – including LMI – to protect itself from liabilities incurred as a result of its business activities. Amtrak maintains that these insurers are responsible for providing coverage for the Liability Claims.

For nearly a decade, Amtrak and its insurers attempted to resolve these coverage claims. To that end, they entered into standstill agreements designed to forestall coverage litigation. The standstill agreement between Amtrak and LMI included the following termination clause:

> Either party may terminate this Agreement by giving written notice to the other by facsimile and certified mail. The effective date of any such termination shall be at 11:59 a.m. (Eastern Time) on the fifteenth business day following the date that such notice is sent. . . . Upon termination . . . of this Agreement, each of the parties will be free to institute a lawsuit or other proceeding against the other with respect to coverage for the Liability Claims.

Rawlings Decl., Ex. 3. On July 19, 2014, Amtrak provided written notice to its insurers – including LMI – of its termination of the standstill agreement. LMI filed

2

this action on August 8, 2014, the day that its standstill agreement with Amtrak expired. Amtrak filed the D.C. Action on August 11, 2014.

## II.

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought. . . ." 28 U.S.C. § 1404(a). Section 1404(a) motions require a two-part inquiry: "(1) whether the action could have been brought in the transferee court, and (2) whether the interests of justice and convenience of the parties and witnesses will be served by the transfer."[2] *JetBlue Airways Corp., v. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 398 (E.D.N.Y. 2013) (Weinstein, J.).

Relevant factors in deciding whether transfer is warranted include:

> (1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with governing law; (8) the weight accorded to plaintiff's choice of forum; and (9) trial efficiency and the interests of justice based on the totality of the circumstances.

*Id.* "District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d. Cir. 2006).

---

[2] The parties do not dispute that this action could have been brought in the District of Columbia.

3

The moving party must establish that transfer is warranted "by clear and convincing evidence." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 114 (2d Cir. 2010).

## A. First-Filed Rule

Generally, "where there are two competing lawsuits, the first suit should have priority." *Id.* at 112. There are two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." *Emp'rs Ins. of Wausau v. Fox Entm't Grp., Inc.*, 522 F.3d 221, 274-75 (2d. Cir. 2008). "The factors relevant to the balance of convenience analysis are essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. § 1404(a)." *Id.*

### 1. Special Circumstances

Amtrak petitions the Court to transfer this action to the District of Columbia under the special circumstances exception to the first-filed rule because it was: (1) improperly anticipatory, and (2) motivated solely by forum shopping. The Court will address each argument in turn.

Amtrak argues that this action was improperly anticipatory because LMI filed it after Amtrak provided notice that it was terminating the standstill agreement. This argument fails. "[I]n order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to

deadlines and subsequent legal action." *Fox*, 522 F.3d at 276. No such threat existed here. Amtrak only gave notice of its intent to terminate the standstill agreement. It did not threaten litigation, provide deadlines or identify a venue for an impending lawsuit. Moreover, the adversarial nature of the parties' dealings prior to LMI's filing of this action does not render it improperly anticipatory. *See id.* at 277 ("Although litigation was clearly on the horizon, evidenced by the parties' retention of coverage counsel and the general tenor of the communications leading up to the action . . . there was no notice letter or other communication conveying a specific threat of litigation.").

Amtrak further maintains – without any support – that this action was motivated solely by impermissible forum shopping because insurers perceive New York as a more favorable forum for coverage disputes. This argument is unavailing. For forum shopping to constitute a special circumstance, "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimis that a full balance of convenience analysis would not be necessary to determine that the second forum is more appropriate than the first." *Id.* at 276 (internal quotations omitted). Amtrak has offered no evidence that LMI engaged in manipulative or deceptive behavior in selecting a New York forum. Moreover, the connection between this action and New York is not so weak that a balance of convenience analysis is unnecessary. As such, transfer is not warranted under the special circumstances exception.

### 2. Balance of Convenience

Amtrak also contends that the balance of convenience analysis favors the D.C. Action. As discussed below, the balance of convenience factors do not favor departure from the first-filed rule and transfer of this action to the District of Columbia.

#### i. Convenience of Witnesses

"The convenience of witnesses is typically the most important factor when considering a motion to transfer." *AGCS Marine Ins. Co. v. Associated Gas & Oil Co., Ltd.*, 775 F. Supp. 2d 640, 647 (S.D.N.Y. 2011). Amtrak has identified three employees it expects will testify in this litigation. Two of these employees – Cathy Rawlings ("Rawlings") and Na'im Rahmann ("Rahmann") – work in Washington, D.C. Absent transfer, these individuals will have to travel from Washington, D.C. to Brooklyn. However, Rawlings and Rahmann are party witnesses who Amtrak can require to participate in this action. *See Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 30 (E.D.N.Y. 2014) ("[T]he convenience of non-party witnesses is accorded more weight than that of party witnesses."). Amtrak is also uniquely positioned to provide them with transportation along the northeast corridor on its high-speed rail line. *See JetBlue Airways Corp.*, 960 F. Supp. 2d at 399 ("[I]f called to testify in person, JetBlue employees can be flown to [the transferee district] on the employer's aircraft.").

Amtrak is also not forthcoming on the issue of whether other employees with knowledge of the matters about which Rahmann will testify could conveniently appear

in this Court. Rather, it vaguely maintains that such individuals "are located outside the Eastern District of New York." Rahmann Decl. ¶ 4. Further, the other Amtrak employee who will testify – Craig Caldwell – works in Philadelphia, which is closer to Brooklyn than Washington, D.C. On the whole, Amtrak has not demonstrated sufficient inconvenience to show that transfer is justified under this factor.[3]

### ii. Convenience of Parties

While Amtrak is headquartered in Washington, D.C., it does significant business, and maintains a substantial operational presence, in New York. *See* Leimkuhler Decl. ¶ 4-6, Ex. 1-3. In fact, Amtrak commenced a $500 million coverage action against a number of insurers in the Southern District of New York as recently as September 2014. *See Nat'l R.R. Passenger Corp. v. Ace Bermuda, Ins., Ltd.*, No. 14-CV-7510 (S.D.N.Y.). Altogether, Amtrak would be minimally inconvenienced – if at all – by having to litigate this case in New York. As such, this factor is entitled to no real weight.

### iii. Location of Relevant Documents

Amtrak asserts that relevant documents are located in Washington, D.C. and ambiguously states that they "may not all exist in easily portable form." Def. Br. at 12. "The location of relevant documents is largely a neutral factor in today's world of

---

[3] LMI also lists "potential" non-party witnesses located in New York who "may have important information" regarding the environmental damage claims. Pl. Br. at 15. However, these individuals do not factor into the Court's analysis because LMI has not specified the content of their testimony or asserted that these witnesses will actually be called.

faxing, scanning, and emailing documents." *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 484 (S.D.N.Y. 2007); *see also Eres N.V. v. Citgo Asphalt Refining Co.*, 605 F. Supp. 2d 473, 481 (S.D.N.Y. 2009) ("[M]any courts have noted that documents may be transferred from one district to another district across the country with little difficulty, using electronic means of duplication and transmission."); *ESPN, Inc. v. Quicksilver, Inc.*, 581 F. Supp. 2d 542, 549 (S.D.N.Y. 2008) ("In an era of electronic documents, easy copying and overnight shipping, this factor assumes much less importance than it did formerly."). Accordingly, this factor is neutral.

### iv. Locus of Operative Facts

"When assessing the locus of operative facts in insurance coverage disputes, courts typically emphasize the site of negotiations, purchase, and delivery of the policy in question." *Liberty Mut. Ins. Co. v. Fairbanks Co.*, 17 F. Supp. 3d 385, 396 (S.D.N.Y. 2014). Amtrak argues that the policies at issue were "purchased and delivered" in Washington, D.C. Rawlings Decl. ¶ 5. However, Amtrak has not provided any detailed evidence to support this conclusory assertion. Moreover, the minimal policy documentation Amtrak has produced does not show that the policies were purchased and delivered in Washington, D.C. In contrast, LMI has submitted numerous, detailed declarations from insurance underwriters and company representatives describing how the policies at issue were negotiated, sold and delivered

in a variety of locations outside both Washington, D.C. and New York. Consequently, the circumstances surrounding the execution of the policies do not favor the District of Columbia over this Court.

New York is also a more suitable loci of operative facts for this litigation than Washington, D.C. because the occurrences underlying the Liability Claims have a stronger connection to New York. *See Royal Ins. Co. v. Tower Records, Inc.*, No. 02-CV-2612, 2002 WL 31385815, at *8 n. 6 (S.D.N.Y. Oct. 22, 2002) (noting that the locations of casualties giving rise to an insurance coverage dispute are also "operative facts"). At least four of the environmental claim sites are located in New York, and three are in this District. In contrast, Amtrak has identified only one site in Washington, D.C. Additionally, 44% of Amtrak's environmental liability costs have been incurred at sites in New York – more than twice the costs incurred in any other jurisdiction. Furthermore, 18% of the bodily injury claims arose in New York, while only 9% emanate from Washington, D.C. Consequently, this factor weighs strongly against transfer.

### v. Familiarity with Governing Law

Amtrak contends that this action should be transferred to the District of Columbia because the policies at issue are governed by District of Columbia law. However, this factor is "accorded little weight on a motion to transfer venue because federal courts are deemed capable of applying the law of other states." *Neil Bros. Ltd*

9

*v. World Wide Lines, Inc.*, 425 F. Supp. 2d 325, 333 (E.D.N.Y. 2006) (internal quotations and citation omitted); *see also Guardian Life Ins. Co. v. Hernandez*, No. 11-CV-2114, 2011 WL 3678134, at *4 (S.D.N.Y. Aug. 22, 2011) ("This is one of the least important factors in determining a motion to transfer, especially where no complex questions of foreign law are involved.") (internal citation omitted). Accordingly, this factor only minimally weighs in favor of transfer.

### vi. Plaintiff's Choice of Forum

"Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Iragorri v. United Tech. Corp.*, 274 F.3d 65, 70 (2d Cir. 2001) (internal citation omitted). As explained, New York is a stronger loci of operative facts for this action than the District of Columbia. *See JetBlue Airways Corp.*, 960 F. Supp. 2d at 400 (observing that this factor "militates against transfer when operative facts occurred in the plaintiff's choice of forum"). As such, LMI's choice of forum is entitled to significant deference. *See Accantia Grp. Holdings v. Food Mkt. Merch., Inc.*, 908 F. Supp. 2d 439, 441 (S.D.N.Y. 2012) (noting that a plaintiff's choice of forum is entitled to "considerable deference" when there is "a material connection between the forum state and the underlying events").

### vii. Trial Efficiency and the Interests of Justice

Amtrak argues that the D.C. Action is "more comprehensive" than this action because it includes Amtrak's damages claims against its insurers. Def. Br. at 15. This

argument fails because Amtrak has asserted those claims in this action. Amtrak also contends that the LMI policies contained a Service of Suit clause providing that coverage disputes would be in a forum of Amtrak's choosing. However, this clause only required LMI to "submit to the jurisdiction" of a United States court in the event of a coverage dispute. Rawlings Decl. ¶ 8, Ex. 1. It did not limit LMI's ability to select the forum in which to bring a coverage action. Altogether, Amtrak has failed to show how considerations of trial efficiency and the interests of justice warrant transfer to the District of Columbia.

### III.

Amtrak has not made a clear and convincing showing that this case should be transferred to the District of Columbia. *See Accantia*, 908 F. Supp. 2d at 441("[A] court should not disturb a plaintiff's choice of forum unless the defendants make a clear and convincing showing that the balance of convenience factors defendants' choice."). Accordingly, its motion is denied.

**SO ORDERED.**

<u>/s/ Frederic Block</u>
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 13, 2015

11