**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
**CERTAIN UNDERWRITERS at LLOYD'S**
**et al.,**

                           **Plaintiffs,**                    **MEMORANDUM**
                                                             **AND ORDER**

    -against-

                                                                             **14-CV-4717 (FB)**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION et al.,**

                           **Defendants.**
------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

      Currently pending before the Court, in this declaratory judgment insurance coverage action, are objections filed by plaintiffs London Market Insurers ("LMI") to the Report and Recommendation of Special Master Peter Woodin ("Special Master") dated January 20, 2017 ("R&R").[1] See Motion for Discovery (Feb. 2, 2017) ("Objections"), Electronic Case Filing Docket Entry ("DE") #568. LMI object to one narrow aspect of the R&R, which afforded defendant National Railroad Passenger Corporation ("Amtrak") the opportunity to supplement its privilege log with respect to 54 log entries.[2] For the reasons that follow, the Court sustains

---

[1] The Special Master filed his original Report and Recommendation on January 19, 2017 (DE #559) and a corrected version due to certain typographical errors on January 20, 2017. See Report and Recommendation (Jan. 20, 2017), DE #561; Letter to Court from Peter H. Woodin (Jan. 20, 2017), DE #560.

[2] Although the Special Master directed Amtrak to supplement 68 log entries, he listed only 67 entries, 12 of which were listed twice. See R&R at 17 (log entries 652, 1011, 1017, 1794, 1798, 2811, 2812, 2828, 2856, 2949, 2958, 3192). Of those 55 log entries, Amtrak had previously produced the document described in one of the entries. See Response to Objections (Feb. 6, 2017) at 1, DE #577. Therefore, there are in fact 54 challenged log entries.

LMI's objections.

## BACKGROUND

**I.  November 2015 Motion to Compel**

In a motion to compel filed in November 2015, LMI challenged the original privilege log served by Amtrak, which was compiled in a categorical format encompassing over 5,000 documents described in 39 log entries; LMI sought an order compelling Amtrak to produce, *inter alia,* an itemized privilege log listing each document withheld under claim of privilege. See Motion to Compel (Nov. 23, 2015) ("11/23/15 Motion to Compel") at 4-9, DE #255; Exhibit B to 11/23/15 Motion to Compel, DE #255-3.  Amtrak had also produced a log of metadata that it had exported from its electronic email discovery, which provided further information regarding approximately 3,600 of the 5,000 documents described in the categorical log.  See Metadata Export (Dec. 17, 2015), DE #267-6.

Following lengthy oral argument concerning Amtrak's privilege log, this Court directed Amtrak to produce "a more refined categorical privilege log[.]"  See Minute Entry (Feb. 1, 2016) at 1, DE #304.  Instead, on February 26, 2016, Amtrak produced an itemized document-by-document log and, on March 4, 2016, a revised itemized log ("3/4/16 Privilege Log").  See Declaration of Mark J. Leimkuhler (Apr. 4, 2016) ¶ 3, DE #342-1; 3/4/16 Privilege Log (Apr. 4, 2016), DE #342-4.

**II.  April 2016 Motion to Compel**

On April 4, 2016, following discussions by the parties regarding LMI's claims that 3,105 entries on the document-by-document log contained insufficient information, LMI filed a motion to compel the production of most of the withheld documents on the ground that

Amtrak's itemized privilege log provided inadequate document descriptions. See Motion to Compel (Apr. 4, 2016) ("4/4/16 Motion to Compel") at 1, DE #342; Response in Opposition (Apr. 14, 2016) ("4/14/16 Amtrak Opp.") at 1, DE #360. Amtrak's submission opposing that motion attached a further revised itemized privilege log ("Revised Privilege Log"), with supplemental descriptions of the subject documents, which Amtrak argued mooted the issues raised in LMI's motion. See Revised Privilege Log (Apr. 14, 2016), DE #360-2; 4/14/16 Amtrak Opp. at 1-2. Amtrak also argued that LMI's motion was filed prematurely since LMI knew that Amtrak had been engaged in a review of the challenged documents. See 4/14/16 Amtrak Opp. at 1-2. In their reply, LMI requested that the Court strike the Revised Privilege Log since it had been produced after the filing of LMI's motion to compel, and advised that if the Revised Privilege Log were deemed to be the operative log, LMI would again move to compel "because even an initial, partial review shows that the new descriptions are mass produced, generic and do not support the privilege claims[.]" See Reply to Response to Motion (Apr. 20, 2016) at 2 n.3, DE #375.

By order issued on June 10, 2016, this Court deemed the Revised Privilege Log "the operative log," and directed Amtrak not to "make any additions or further edits . . . while [LMI's] motion [to compel] is pending." See Order (June 10, 2016) ("6/10/16 Order") at 2, DE #392. In a further Memorandum and Order dated July 13, 2016, this Court expounded on the reasons for deeming the Revised Privilege Log to be the operative log and, *inter alia*, referred to the Special Master the adequacy of the privilege entries challenged by LMI in their Exhibits F and I ("Updated Exhibits F and I"), see Memorandum and Order (July 13, 2016) at 6-11, 33, DE #406; each of those two exhibits listed privilege log entries that LMI challenged

as inadequate on a particular ground, see Letter Motion for Discovery (June 21, 2016) at 1-2, DE #396; Updated Exhibits F and I, DE #396-2, #396-5.

## III. Special Master's Report and Recommendation

On January 20, 2017, the Special Master issued his well-reasoned and thorough Report and Recommendation. As relevant to the instant objections, the Special Master reviewed the log entries listed in Updated Exhibit F and found that "almost all of them, on their face, meet the requirements necessary to sustain a claim of privilege." R&R at 6. However, the Special Master also determined that 12 log entries contained in Updated Exhibit F were insufficient "to even marginally support a claim of potential privilege" despite "whatever additional descriptive information may have been provided" in the Revised Privilege Log. Id. at 9, 17. As to those log entries listed in Updated Exhibit I (which includes the 12 log entries listed in Updated Exhibit F), the Special Master found that 55 of the log entries were similarly insufficient to "even marginally support a claim of potential privilege." Id. at 16, 17.

Turning to the appropriate remedy for Amtrak's failure to provide adequate privilege log entries for those documents, the Special Master determined that a finding of waiver would be "a harsh result" since there was nothing in the record to suggest that Amtrak "intentionally delay[ed] compliance with its privilege obligations." Id. at 18. Moreover, the Special Master reasoned that the 55 entries he found to be inadequate were relatively few compared to the several thousands of documents withheld, and his *in camera* review of a sample of the universe of withheld documents had led him to conclude that only a few of the examined documents should have been produced. See id. As a result, the Special Master recommended that Amtrak be afforded an opportunity to supplement the entries for these documents with further

information sufficient to support its claims of privilege.  See id.

## IV. LMI's Objections to the Report and Recommendation

By their objections to the R&R, LMI argue that the Special Master's legal conclusion regarding the appropriate remedy for Amtrak's failure to substantiate its privilege claims as to the 54 documents at issue is in error as a matter of law and will cause substantial prejudice to LMI.  See Objections at 1.  Specifically, LMI contend that if Amtrak is permitted once again to supplement its privilege log entries, further litigation will ensue and, by the time any of the withheld documents are ordered to be disclosed, LMI will likely be unable to use those documents in their summary judgment briefs and expert discovery.  See id.  Therefore, LMI seek the immediate production of the 54 documents as to which the Special Master found that Amtrak had failed to "even marginally support the claims of potential privilege." See id.  In response, and without having sought and obtained leave of the Court to do so, Amtrak has filed yet another revised log, which purports to supplement its descriptions for the log entries that the Special Master found to be inadequate.  See Supplemental Descriptions Per Special Master's Report and Recommendation (Feb. 6, 2017) ("Supplemental Descriptions"), DE #577-1.  Amtrak argues that the Special Master's recommended remedy is appropriate because relatively few of Amtrak's privilege entries were found to be inadequate and, in any event, most of the documents at issue are irrelevant to the upcoming trial regarding Sunnyside Yards. See Response to Objections at 1-2.

**DISCUSSION**

Rule 53(f)(1) of the Federal Rules of Civil Procedure provides that, "[i]n acting on a master's order, report, or recommendations, the court . . . may adopt or affirm, modify, wholly or partly reject or reverse, or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1). In turn, Rule 53(f)(4) states that "[t]he court must decide *de novo* all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4). As to those aspects of a report and recommendation to which no objections are filed, a Special Master's conclusions of law and findings of fact will be adopted unless clearly erroneous. See CA, Inc. v. Simple.com, Inc., 780 F.Supp.2d 196, 208 (E.D.N.Y. 2009); cf. Sergeants Benevolent Ass'n Health & Welfare Fund v. Sanofi Aventis U.S. LLP, 20 F.Supp.3d 305, 314 (E.D.N.Y. 2014) (court "is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed"), aff'd, 806 F.3d 71 (2d Cir. 2015).

In their 4/4/16 Motion to Compel, LMI argued that the privilege log entries listed in Updated Exhibit I, each of which describe the purportedly privileged communications as "regarding the scope and status of work," demonstrate that "the documents were not created for the predominant purpose of requesting or providing legal advice, and instead relate to ordinary business[,]" thereby failing to qualify for protection under the attorney-client privilege. See 4/4/16 Motion to Compel at 2. Amtrak countered that since it is in the business of providing passenger railroad service, documents regarding environmental remediation work could not have been created for a business as opposed to a legal purpose. See 4/14/16 Amtrak Opp. at 3. LMI additionally moved to compel the documents described in the privilege log

entries listed in Updated Exhibit F (which are likewise included in Updated Exhibit I) because neither the authors nor recipients of the communications are lawyers, though the documents may have been "cc'd" to a lawyer. See 4/4/16 Motion to Compel at 2-3. Amtrak insisted that its Supplemental Descriptions were sufficient to establish the basis for its privilege assertions. See 4/14/16 Amtrak Opp. at 3-4.

"A party invoking the attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." In re County of Erie, 473 F.3d 413, 419 (2d Cir. 2007); United States v. Constr. Prods. Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996); see Fisher v. United States, 425 U.S. 391, 403 (1976). The burden of establishing the applicability of the privilege and all of its elements rests with the party claiming protection. See In re Grand Jury Proceedings, 219 F.3d 175, 182 (2d Cir. 2000); Constr. Prods., 73 F.3d at 473-74. "Any ambiguities as to whether the essential elements have been met are construed against the party asserting the privilege." Koumoulis v. Indep. Fin. Mktg. Grp., Inc., 295 F.R.D. 28, 38 (E.D.N.Y. 2013), aff'd, 29 F.Supp.3d 142 (E.D.N.Y. 2014).

In order to merit protection, the "predominant purpose" of the communication must be to render or solicit legal advice as opposed to business advice. See Erie, 473 F.3d at 420. This dichotomy presents special problems in the context of in-house counsel, who often serve dual roles as legal advisors and business consultants. See id. at 421; Complex Sys., Inc. v. ABN AMRO Bank N.V., 279 F.R.D. 140, 150 (S.D.N.Y. 2011). "Where there are several possible interpretations of a document based upon the surrounding circumstances, the party asserting the privilege must produce evidence sufficient to satisfy a court that legal, not

business, advice is being sought." Urban Box Office Network, Inc. v. Interfase Managers, L.P., No. 01 Civ. 8854(LTS)(THK), 2006 WL 1004472, at *6 (S.D.N.Y. Apr. 18, 2006).

Rule 26(b)(5) of the Federal Rules of Civil Procedure requires that a party asserting privilege "describe the nature of the documents, communications, or tangible things not produced or disclosed - and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P 26(b)(5)(A)(ii). Local Civil Rule 26.2 of the Eastern District of New York further requires that a party withholding documents on the basis of privilege produce a log that includes "(I) the type of document, e.g., letter or memorandum; (ii) the general subject matter of the document; (iii) the date of the document; (iv) the author of the document, the addressees of the document, and any other recipients, and, where not apparent, the relationship of the author, addressees, and recipients to each other[.]" S. & E.D.N.Y. Local Civ. R. 26.2(a)(2)(A).

Amtrak's 3/4/16 Privilege Log - its second iteration of an itemized log - largely ignored these standards. As one example, the 3/4/16 Privilege Log entry for document number 599 (listed in Updated Exhibit I) read as follows: "Internal Amtrak communications with in-house counsel regarding the scope and status of work for the Sunnyside Yard site." See 3/4/16 Priv. Log. The following month, when faced with LMI's 4/4/16 Motion to Compel, Amtrak revised its privilege log and, as to document number 599, added the following description: "Email from Amtrak personnel to in-house counsel regarding Sunnyside Yard." See Revised Priv. Log. The description included in the Revised Privilege Log thus added no salient information vis-à-vis LMI's challenge to the applicability of the privilege: nothing in either description satisfies LMI's concern that the communications "regarding the

scope and status or work" were not created for the predominant purpose of requesting or providing legal advice.

To be sure, where there are deficiencies in a privilege log, a court may also consider evidentiary submissions such as affidavits "to fill in any factual gaps." See Constr. Prods., 73 F.3d at 474; John Wiley & Sons, Inc. v. Book Dog Books, LLC, 17 F.Supp.3d 400, 404-05 (S.D.N.Y. 2014) (noting that the elements of privilege are typically established through sworn statements). Nevertheless, neither Amtrak's opposing letter-brief, nor its supporting declarations,[3] established that the disputed documents regarding "the scope and status of work" had been created for the predominant purpose of obtaining or providing legal advice.[4] See Constr. Prods., 73 F.3d at 474 (pointing to "glaring absence of any supporting affidavits or other documentation" to support privilege claims); NextG Networks of NY, Inc. v. City of New York, No. 03 Civ. 9672(RMB)(JCF), 2005 WL 857433, at *2 (S.D.N.Y. Apr. 13, 2005) (finding that City failed to satisfy its burden of demonstrating that privilege attached, where it relied on belatedly produced privilege log and "submitted no affidavit explaining the context in which any of the communications were made"). In fact, Amtrak's argument that the

---

[3] The declaration from one of Amtrak's outside counsel merely authenticated a series of documents. See Declaration of Daniel J. Healy (Apr. 14, 2016), DE #360-1. The other declaration, from one of Amtrak's in-house counsel, addressed only issues relating to the work production doctrine and common interest privilege raised in LMI's 4/4/16 Motion to Compel. See Declaration of Michael Stern, Esq. (Apr. 14, 2016), DE # 360-19.

[4] Not all of the disputed documents were withheld in their entirety. As to half of the log entries on Updated Exhibit I, Amtrak's 4/14/16 Revised Privilege Log added that each document had been "[p]roduced with redactions," but provided no supplemental information to establish the propriety of the redactions. See Revised Priv. Log entries 1011, 1019, 1022, 1798, 1799, 1990, 2269, 2289, 2326, 2329, 2448, 2568, 2572, 2580, 2789, 2798, 2799, 2811, 2812, 2828, 2856, 2860, 2949, 2978, 3187, 3192, 3203.

challenged documents must have been created for a legal purpose because environmental remediation is not Amtrak's regular business appears to conflate two different legal principles: the requirement that work product materials be created because of the prospect of litigation, rather than in the ordinary course of business, and the requirement that materials claimed to be subject to the attorney-client privilege be created principally for the purpose of seeking or providing legal advice, as opposed to business advice. While environmental remediation is not Amtrak's regular business, environmental remediation, like any corporate undertaking, may implicate business considerations and communications, to which in-house counsel may be privy; it does not necessarily follow that such communications are protected from disclosure.

Amtrak's third attempt at an itemized log failed to cure the aforesaid deficiency cited in LMI's 4/4/16 Motion to Compel. Under these circumstances, in this Court's view, it would be unfair to LMI to allow Amtrak once again to revise its privilege log, ten months later, in an attempt to substantiate its claims of privilege as to the log entries listed in Updated Exhibit I "regarding the scope and status of work." It was incumbent upon Amtrak, which bears the burden of establishing the applicability of the privilege, to provide sufficient information in its privilege log and/or proffer evidence to demonstrate that these documents were created predominantly for a legal rather than a business purpose.

Indeed, even if the Court were to consider the Supplemental Descriptions belatedly submitted by Amtrak in response to LMI's objections to the Special Master's R&R, those descriptions in some instances raise more questions than they resolve.[5] For example, the new

---

[5] One issue that was not raised by LMI is that many of the privilege log entries demonstrate
(continued…)

Supplemental Description for privilege log entry number 599 states, "[e]mail from Sunnyside Yard personnel to in-house counsel seeking legal advice regarding claims alleged against Amtrak involving bodily injury resulting from odors at Sunnyside Yard." See Supplemental Descriptions at 1. This Supplemental Description bears little relation to the original and revised descriptions, particularly the original description, "regarding the scope and status of work." Standing alone, the Supplemental Description may be sufficient to "permit a judgment as to whether a document is at least potentially protected from disclosure[.]" Constr. Prods., 73 F.3d at 473 (quoting Bowne of New York City, Inc. v. AmBase Corp., 150 F.R.D. 465, 474 (S.D.N.Y. 1993)). However, Amtrak's "Supplemental Description" is a misnomer; rather than "supplementing" the thrice-revised itemized log, it appears to describe a document different from the one referenced in the 3/4/16 Privilege Log. Several other "Supplemental Descriptions" for log entries that purported to relate to documents "regarding scope and status of work" suffer from the same problem. See, e.g., log entry 654 ("[e]mail conversation . . . seeking legal advice regarding a proposed real estate transaction involving environmental

---

[5](…continued)
that certain of the withheld documents were sent to individuals whom Amtrak has identified only as "Amtrak employee." See, e.g., privilege log entry numbers 599 (cc'd to T. Pazsik), 600 (recipients Moritz, T.; Jamison, M.; Wurpel, M.; and Mitten, C.), 654 (recipient Angelo, M.). In order to avoid a finding of waiver, distribution of privileged information within a corporation must be limited to those employees who have a "'need to know the content of the privileged communication in order to perform her job effectively or to make informed decisions concerning, or affected by, the subject matter of the privileged communication.'" Norton v. Town of Islip, No. CV 04-3079(PKC)(SIL), 2015 WL 5542543, at *3 (E.D.N.Y. Sept. 18, 2015) (quoting Scholtisek v. Eldre Corp., 441 F.Supp.2d 459, 464 (W.D.N.Y. 2006)) (brackets omitted); see Verschoth v. Time Warner, Inc., No. 00CIV1339(AGS)(JCF), 2001 WL 286763, at *2 (S.D.N.Y. Mar. 22, 2001). Here, Amtrak has made no showing that the circulation of the withheld documents was limited to those of its employees with a need to know.

issues . . ."); log entries 1794 and 1798 ("requesting legal advice regarding insurance coverage for Sunnyside Yard project"); log entries 1795 and 1799 ("seeking legal advice from in-house counsel regarding current environmental coverage renewal"); log entry 1996 ("requesting waiver of potential conflict based on counsel's firm representing a separate client with potentially adverse interests to those of Amtrak"). Amtrak offers no explanation for such material alterations in the new versus the old descriptions. The Court will not now ignore the extensive proceedings that preceded the Supplemental Descriptions and allow Amtrak to create entirely new descriptions of documents it has withheld since November 2015. As the Court made clear more than eight months ago, the parties would not be allowed to "treat[] . . . discovery disputes as moving targets." 6/10/16 Order at 2.

The failure to provide sufficiently descriptive information in a privilege log may result in a finding that the proponent of the privilege has not satisfied its burden. See Constr. Prods., 73 F.3d at 473-74; Davis v. City of New York, No. 10 Civ. 699(SAS)(HBP), 2012 WL 612794, at *6 (S.D.N.Y. Feb. 27, 2012); OneBeacon Ins. Co. v. Forman Int'l, Ltd., No. 04 Civ. 2271(RWS), 2006 WL 3771010, at *6-*7 (S.D.N.Y. Dec. 15, 2006). Each time Amtrak has revised its privilege log, it "'is essentially a concession that the initial privilege logs were inadequate.'" SEC v. Yorkville Advisors, LLC, 300 F.R.D 152, 162 (S.D.N.Y. 2014) (quoting Aurora Loan Servs., Inc. v. Posner, Posner & Assocs., P.C., 499 F.Supp.2d 475, 479 (S.D.N.Y. 2007)).

Although this Court agrees with the Special Master that Amtrak has not intentionally delayed compliance with its obligations for asserting privilege, Amtrak has had ample opportunity to meet its burden to demonstrate the propriety of its withholding of the challenged

documents. In the sole case cited by Amtrak for the proposition that it should be permitted to further revise its privilege log entries, see Trudeau v. New York State Consumer Prot. Bd., 237 F.R.D. 325 (N.D.N.Y. 2006), the party invoking the privilege had not already been allowed to supplement its original log entries. Moreover, while allowing a first round of revisions to the challenged logs, the court in Trudeau made clear that it had the authority to direct production of the challenged documents: "Considering the deficiencies of Defendants' Privilege Logs, the Plaintiffs are correct that the Court could declare all of the purported privileges waived." Id. at 335. In other words, where parties invoking privilege produce belated and/or inadequate privilege logs, courts have discretion to determine whether to order production of the withheld documents or instead to direct the withholding party to submit an appropriate privilege log. See McNamee v. Clemens, No. 09 CV 1647(SJ), 2013 WL 6572899, at *2 (E.D.N.Y. Sept. 18, 2013) (citing *In re* Chevron Corp., 749 F.Supp.2d 170, 181-82 (S.D.N.Y. 2010), aff'd sub nom. Lago Agro Plaintiffs v. Chevron Corp., 409 F.App'x 393 (2d Cir. 2010); OneBeacon Ins., 2006 WL 3771010, at *8).

In contrast to the case on which it relies, Amtrak has already availed itself of the remedy ordered in Trudeau by revising its already-amended privilege log in response to LMI's motion to compel. Put simply, as the Special Master found, Amtrak failed to satisfy its burden as to the 54 documents at issue even after this Court permitted Amtrak to revise its log over LMI's objection. Although the Special Master was inclined to deal more leniently with the deficiencies at issue, this Court, having greater familiarity with the protracted procedural history of this case and the looming deadlines, exercises its discretion and declines to give

Amtrak a fourth opportunity to satisfy its privilege obligations.[6] See generally Lago Agrio Plaintiffs, 409 F.App'x at 395 (concluding that "the District Court did not abuse its discretion" in ruling that the belated production of a privilege log resulted in a waiver of the privilege).

As to Amtrak's argument that many of the documents do not relate to Sunnyside Yards, while the upcoming trial is limited to that site, documentary discovery has not been so limited.

## CONCLUSION

Except to the limited extent described herein, the Court adopts the Report and Recommendation of Special Master Woodin and thanks him for his exemplary handling of a monumental task. The Court modifies as follows that aspect of the Report and Recommendation that would permit Amtrak to further supplement its privilege log: Instead, Amtrak must produce, by February 23, 2017, the 54 withheld documents listed on page 17 of the Report and Recommendation.

Any objections to the Memorandum and Order must be filed with the Honorable Frederic Block by March 3, 2017, or will be deemed waived. The filing of any objection will not automatically stay this Court's order of production.

SO ORDERED.

Dated: Brooklyn, New York
February 17, 2017

/s/ *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[6] See, e.g., Memorandum and Order (Apr. 25, 2016) at 15-17, DE #376 (declining to allow LMI to revise their privilege log to avoid court-ordered production of documents claimed to be privileged).