**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
**CERTAIN UNDERWRITERS at LLOYD'S,**
**et al.,**

                      **Plaintiffs,**                 **MEMORANDUM**
                                                                 **AND ORDER**
     -against-
                                                                  **14-CV-4717 (FB)**

**NATIONAL RAILROAD PASSENGER**
**CORPORATION, et al.,**

                      **Defendants.**
-------------------------------------------------------------x

**ROANNE L. MANN, CHIEF UNITED STATES MAGISTRATE JUDGE:**

     Currently pending before the Court, in this declaratory judgment insurance coverage action, is a motion filed by plaintiffs London Market Insurers ("LMI") seeking to preclude defendant National Railroad Passenger Corporation ("Amtrak") from asserting newly disclosed damages claims, as a sanction for Amtrak's untimely disclosure. <u>See</u> Motion to Strike Untimely Cost Claims (Mar. 9, 2017) ("Motion to Strike"), Electronic Case Filing Docket Entry ("DE") #583. For the reasons that follow, LMI's motion to preclude is denied.

## BACKGROUND

     In November 2016, LMI obtained invoices, pursuant to a subpoena served on American Premier Underwriters ("APU"), the successor to Penn Central, the previous owner of Sunnyside Yards, the site at issue during this phase of the litigation, regarding additional remediation work completed by Amtrak. <u>See</u> Response in Opposition (Mar. 14, 2017) ("Amtrak Opp.") at 1 & n.1, DE #584. LMI provided Amtrak with copies of the documents

produced by APU in January 2017.[1]  See id. at 1 & n.1, 2.

      Also in January 2017, LMI discovered a court filing in another case demonstrating that Amtrak had recovered from APU more than $722,000 of the costs claimed for environmental remediation of Sunnyside Yards.  See Motion to Strike at 1.  LMI determined that Amtrak had not deducted this amount from its damages calculation, thereby seeking a double recovery of that amount.  See id.  On February 17, 2017, LMI requested that Amtrak supplement its discovery responses regarding this payment.  See id.; Letter to Rhonda Orin and Daniel Healy from Aisha Bembry dated February 17, 2017 (attached as Ex. A to Declaration of Aisha Bembry dated March 9, 2017 ("Bembry Decl.")), DE #583-2.  On February 27, 2017, Amtrak updated its interrogatory response to reflect that Amtrak had received from APU $722,988.63, in addition to the $8.6 million that Amtrak had previously disclosed.  See Amtrak Opp. at 1; Amtrak's Responses and Objections to Plaintiffs' Fourth Set of Interrogatories ("Amtrak's Responses to 4th Set of Interrogatories") (attached as Ex. C to Bembry Decl.) at 4, DE #583-4.  Amtrak also updated its damages calculation to reflect approximately $4.067 million in invoices for "investigation and remediation costs relating to the Sunnyside Yards Site," included in the production from APU, that had not previously been included in Amtrak's computation of damages.  See Amtrak Opp. at 1; Amtrak's Responses to 4th Set of Interrogatories at 6.  Amtrak's expert had stated in his report, dated January 30, 2017, that Amtrak had identified many invoices that pre-dated the general ledger data, including approximately $1.5 million in environmental remediation costs, and had reserved the right to

---

[1] The parties blame each other for the delay in production to Amtrak.  See Amtrak Opp. at 1 & n.2; Reply in Support (Mar. 20, 2017) ("LMI Reply") at 1-2 & n.3, DE #588.

update his findings after his review of more than 1,700 documents received from LMI pursuant to the subpoena served on APU. See Amtrak Opp. at 2 n.4; Expert Report of Bruce Dubinsky dated January 30, 2017 ("Dubinsky Report") (attached as Ex. 4 to the Declaration of Daniel Healy dated March 14, 2017) at 12 n.15, 13 n.16, DE #584-5. Amtrak had been unable to locate these invoices, which were created before 1996, because they pre-date the general ledger entries upon which Amtrak had been relying and it was not standard practice at Amtrak to permanently retain paid invoices. See Amtrak Opp. at 1 n.1; Dubinsky Report ¶ 30.

LMI contend that they are prejudiced by Amtrak's late disclosure of additional damages because fact discovery closed on December 16, 2016, expert reports were exchanged on January 30, 2017, and a trial date is "fast approaching." See Motion to Strike at 1. Thus, LMI contend that they have not had the opportunity to take fact discovery on these new damages claims, their expert could not analyze these new claims, and no time remains in the schedule to do so. See id.

## DISCUSSION

Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure provides that "a party must, without awaiting a discovery request, provide to the other parties . . . a computation of each category of damages claimed by the disclosing party -- who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii). The disclosing party must timely supplement or correct its initial disclosures

if it subsequently learns that the information it had provided was either "incomplete or incorrect." Fed. R. Civ. P. 26(e)(1)(A). A party's production of documents supporting its damages claims does not excuse that party "'from its separate obligation to disclose a damages computation.'" See Max Impact, LLC v. Sherwood Grp., Inc., No. 09 Civ. 902 (JGK)(HBP), 2014 WL 902649, at *6 (S.D.N.Y. Mar. 7, 2014) (quoting Agence France Presse v. Morel, 293 F.R.D. 682, 684 (S.D.N.Y. 2013)). If a party fails to provide or supplement information, that party is prohibited from "us[ing] that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

"Preclusion is, of course, a harsh sanction, to be imposed rarely." U.S. Bank Nat'l Ass'n v. PHL Variable Ins. Co., Nos. 12 Civ. 6811 (CM)(JCF), 13 Civ. 1580 (CM)(JCF), 2013 WL 5495542, at *2 (S.D.N.Y. Oct. 3, 2013) (citing Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC, 280 F.R.D. 147, 156 (S.D.N.Y. 2012)); see Lujan v. Cabana Mgmt., Inc., 284 F.R.D. 50, 68 (E.D.N.Y. 2012). Despite the seemingly mandatory language in the Rule, even where a court finds that a discovery failure is not harmless or substantially justified, preclusion is subject to the court's wide discretion. See Design Strategy, Inc. v. Davis, 469 F.3d 284, 294, 297 (2d Cir. 2006). Courts have considered four factors in determining whether preclusion is the appropriate sanction for the failure to timely disclose: 1) the party's explanation for the failure to comply with its disclosure obligations; 2) the importance of the precluded evidence; 3) the prejudice to the opposing party from having to prepare to meet the new evidence; and 4) the possibility of a continuance. See id. at 296 (citing Patterson v. Balsamico, 440 F.3d 104, 117 (2d Cir. 2006)); Max Impact,

2014 WL 902649, at *5.

Amtrak argues that its failure to timely disclose the newly claimed costs is the fault of LMI for not having earlier produced the invoices obtained from APU. However, based on the exhibits submitted by Amtrak detailing communications between the parties' attorneys, it appears that Amtrak would have received copies of the documents sooner had it been more diligent. See Emails exchanged between Aisha Bembry and Daniel Healy (attached as Ex. 2 to the Declaration of Daniel Healy dated March 14, 2017), DE #584-3; Second Declaration of Aisha Bembry (Mar. 20, 2017) ("2d Bembry Decl.") ¶ 6, DE #588-1. Furthermore, these were invoices that had been paid by Amtrak, some of which Amtrak had previously produced in discovery as early as 2015. See 2d Bembry Decl. ¶ 3. Thus, Amtrak's attempt to shift the blame for its own discovery omission falls short. Amtrak cannot credibly complain that its failure to update its damages computation is attributable to LMI's delay in producing documents that, at least at one time, had been in Amtrak's possession. This Court finds that Amtrak is at fault for failing to adequately disclose its new computation of damages within the discovery period. Moreover, such failure was neither substantially justified nor harmless.

Nevertheless, the sanction sought by LMI is too harsh a remedy. LMI does not claim that Amtrak's failure was willful or in bad faith. Although Amtrak does not offer any specific explanation for its failure to timely disclose the newly claimed costs –- apart from the suggestion that it was unaware of this information -- the Court is mindful of the fact, based on its familiarity with the extensive discovery in this case, and by LMI's own admission, see LMI Reply at 2 n.4, that Amtrak has produced hundreds of thousands of pages of documents. Given the volume of documents produced by Amtrak, the age of the documents at issue (more

than 20 years old), and Amtrak's practice of not retaining paid invoices, it is understandable that Amtrak neglected to focus on these particular ones sooner.

To be sure, Amtrak's costs incurred for environmental remediation are an important part of its case. Moreover, any prejudice that LMI would suffer by the late disclosure may be remedied short of preclusion. The newly claimed costs do not affect the parties' arguments on their to-be-filed motions for summary judgment, and trial is several months away. There is sufficient time remaining before trial for LMI to take whatever limited supplemental discovery they need. Indeed, LMI possessed the invoices underlying the newly claimed costs since APU produced the documents in November of last year; Amtrak produced some of the invoices as early as 2015. Although that fact does not absolve Amtrak's failure to timely supplement its computation of damages, LMI were in possession of the underlying damages information before the close of discovery. Having considered the Patterson factors, the Court concludes that preclusion is inappropriate under the circumstances.

The cases cited by LMI in support of preclusion are distinguishable. In those cases, the parties against whom sanctions were sought either failed entirely to provide an adequate computation of damages or waited until the eve of trial or in response to a dispositive motion to make their disclosure. See Design Strategy, 469 F.3d at 295 (plaintiff changed damages theory in pretrial order); CQ, Inc. v. TXU Mining Co., 565 F.3d 268, 279-80 (5th Cir. 2009) (plaintiff failed to disclose computation of various categories of damages); Agence France Presse, 293 F.R.D. at 683-85 (party for the first time changed his damages theory in connection with the preparation of the pretrial order); Spotnana, Inc. v. Am. Talent Agency, Inc., No. 09 Civ. 3698 (LAP), 2010 WL 3341837, at *1-*2 (S.D.N.Y. Aug. 17, 2010)

(defendant never disclosed damages calculation for counterclaim); Gould Paper Corp. v. Madisen Corp., 614 F.Supp.2d 485, 490 (S.D.N.Y. 2009) (defendant never provided damages computation for counterclaim); 24/7 Records, Inc. v. Sony Music Entm't, Inc., 566 F.Supp.2d 305, 318 (S.D.N.Y. 2008) (plaintiff asserted new damages theory just weeks before trial); AVX Corp v. Cabot Corp., 252 F.R.D. 70, 76-81 (D. Mass. 2008) (plaintiff made supplemental response to interrogatory after deadline for opposition to motion for summary judgment).

LMI must file a letter by April 3, 2017, describing the supplemental discovery they seek, limited to the newly disclosed costs claimed by Amtrak.

## **CONCLUSION**

For the foregoing reasons, LMI's motion to preclude is denied.

Any objections to this Memorandum and Order must be filed with the Honorable Frederic Block by April 14, 2017, or will be deemed waived.

**SO ORDERED.**

Dated:    **Brooklyn, New York**
             **March 28, 2017**

/s/    *Roanne L. Mann*
**ROANNE L. MANN**
**CHIEF UNITED STATES MAGISTRATE JUDGE**