UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
CERTAIN UNDERWRITERS AT
LLOYD'S, LONDON; ACCIDENT &
CASUALTY CO.; ACCIDENT
& CASUALTY INSURANCE
COMPANY OF WINTERTHUR;
ACCIDENT & CASUALTY
INSURANCE COMPANY OF
WINTERTHUR (NO. 2A/C);
ACCIDENT & CASUALTY
INSURANCE COMPANY OF
WINTERTHUR (NO. 3 A/C);
AEGON NV FORMERLY AGO
SCHADEVEZEKERING
MAATSCHAPPIJ NV; AG DE 1830
COMPAGNIE BELGE
D'ASSURANCES GENERALES
INCENDIE ACCIDENTS ET
RISQUES DIVERS SA; AMERICAN
HOME INSURANCE COMPANY;
AMSTERDAM - LONDON
VERZEKERING MAATSCHAPPIJ
NV; ANCON INSURANCE
COMPANY (UK) LIMITED;
ARGONAUT NORTHWEST
INSURANCE COMPANY;
ASSICURAZIONI GENERALI SPA
(UK BRANCH); BISHOPSGATE
INSURANCE COMPANY LIMITED;
BRITAMCO POOL; CNA
REINSURANCE COMPANY; CNA
REINSURANCE COMPANY
LIMITED; CORNHILL INSURANCE
COMPANY LIMITED; CREDIT DE
NAMUR; DELTA-LLOYD NON-LIFE
INSURANCE COMPANY LIMITED;

**MEMORANDUM AND ORDER**
Case No. 14-CV-4717-FB-RLM

DELTA-LLOYD SCHADEVER-ZEKERING NV; DILIGENTIA; EUROPEESCHE VERZEKERING MAATSCHAPPIJ NV; EXCESS INSURANCE COMPANY LIMITED; GRESHAM FIRE & ACCIDENT INSURANCE SOCIETY LIMITED; GRESHAM INSURANCE SOCIETY LIMITED; HELVETIA-ACCIDENT SWISS INSURANCE COMPANY (AS PART OF GIBBON "E" GROUP); HARPER INSURANCE LTD F/K/A/ TUREGUM INS CO.; INSTITUTO DE REASSEGUROS DO BRASIL (IRG) - LONDON BRANCH; INTERLLOYD VERZEKERING MAASTSCHAPPIJ NV; KONING & BOEKE VAN 1819; LA BELGIQUE; L'ASSICURAZIONI D'ITALIA; LE ASSICURAZIONI D'ITALIA SPA; LES ASSURANCES GENERALES DE FRANCE; LES PROPRIETAIRES REUNIS S.A. D. ASSURANCES I.A.R.D.; L'ETOILE; LONDON & EDINBURGH GENERAL INSURANCE COMPANY, LONDON AND EDINBURGH GENERAL INSURANCE COMPANY LIMITED; MAAS LLOYD NV SCHADEVER-ZEKERINGSMAATSCHAPPIJ; MERCATOR ALGEMENE VER-ZEKERINGS MAATSCHAPPIJ NV; N.V. ROTTERDAMSE ASSURAN-TIEKAS, N.V. VERZ MIJ DE NOODERN; NAMUR ASSURANCES DU CREDIT; NATIONAL CASUALTY COMPANY; NATIONAL CASUALTY COMPANY OF AMERICA LIMITED;

NISSAN FIRE & MARINE INSURANCE COMPANY; NOORHOLLAND BRANDW; NORWICH UNION FIRE INSURANCE SOCIETY LIMITED; PROVIDENTIAL INSURANCE COMPANY; RHEINLAND VERSICHERUNGS AG; ROYAL NEDERLAND SCHADEVER-ZEKERING NV; ROYALE BELGE SA;  ROYALE BELGE INCENDIE REASSURANCE S.A.;  SIMCOE & ERIE GENERAL INSURANCE COMPANY; ST KATHERINE INSURANCE COMPANY PLC; TAISHO MARINE & FIRE INSURANCE COMPANY LIMITED; TERRA NOVA INSURANCE COMPANY; THE SUMITOMO MARINE AND FIRE INSURANCE COMPANY LIMITED; UNION AMERICA INSURANCE COMPANY LIMITED; WINTERTHUR SWISS INSURANCE COMPANY; WURTTEMBERGISCH FEUERVERSICHERRUNG AG; YASUDA FIRE & MARINE INSURANCE COMPANY (UK) LIMITED,

     Plaintiffs,

 -against-

NATIONAL RAILROAD PASSENGER CORPORATION; ALLIANZ INSURANCE COMPANY;

ALLSTATE INSURANCE COMPANY; AMERICAN HOME

ASSURANCE COMPANY; AMERICAN INSURANCE COMPANY; AMERICAN REINSURANCE COMPANY; ARGONAUT INSURANCE COMPANY; ASSUBEL ACCIDENTS ET DOMMAGES SA; ASTRA S.A. INSURANCE AND REINSURANCE COMPANY AS SUCCESSOR TO ADAS STATE INSURANCE INSTITUTE; ATLANTICA INSURANCE COMPANY; BANCO DE SEGUROS DEL ESTADO; BANDEIRANTE; BELLEFONTE INSURANCE COMPANY (US); BISON INSURANCE COMPANY LIMITED; BRITTANY INSURANCE COMPANY LIMITED; CALIFORNIA UNION INSURANCE COMPANY; CIGNA; COMPAGNIE BELGE D'ASSURANCES CREDIT S.A.; COMPANHIA DE SEGUROS IMPERIO; COMPANIA DE SEGUROS LA REPUBLICA S.A.; CONTINENTAL INSURANCE COMPANY AS SUCCESSOR IN INTEREST TO HARBOR INSURANCE COMPANY AND PACIFIC INSURANCE COMPANY; THE DOMINION INSURANCE COMPANY LIMITED; EURINCO ALLGEMEINE VERSICHERUNGS AKTIENGESELLSCHAFT; EVANSTON INSURANCE COMPANY; FIRST STATE INSURANCE COMPANY;

FIREMAN'S FUND INSURANCE COMPANY; GESB-GRUPO

EMPRESAS SEGURADORAS; GRANITE STATE INSURANCE COMPANY; THE HARTFORD ACCIDENT AND INDEMNITY COMPANY; HASSNEH INSURANCE COMPANY OF ISRAEL LIMITED; INSTITUTO NACIONALI DE REASEGUROS; INSURANCE COMPANY OF NORTH AMERICA; INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA; INTERSTATE REINSURANCE CORPORATION; INTERNATIONAL SURPLUS LINES INSURANCE COMPANY; KOREAN REINSURANCE COMPANY; LANDMARK INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; NATIONAL MUTUAL INSURANCE COMPANY; NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA; NORTHBROOK INSURANCE COMPANY; THE PEOPLE'S INSURANCE COMPANY OF CHINA; RAILROAD ASSOCIATION INSURANCE LIMITED; REAFIANZADORA Y REASEGURADORA DE AMERICA; ROBERTO FEVRE; SHAND MORAHAN & CO.; STRONGHOLD INSURANCE COMPANY LIMITED; VERA CRUZ INSURANCE COMPANY; WAUSAU INTERNATIONAL

UNDERWRITERS; YOSEMITE INSURANCE

COMPANY; and DOES 1-40,

       Defendants.
-------------------------------------------------x

**BLOCK, Senior District Judge:**

Having previously addressed the parties' lengthy motions for summary judgment and presided over a ten-day trial, the Court's current goal is to bring the first stage of this extraordinarily contentious case to a close. To that end, the Court solicited the parties' views as to how to proceed. Although those views predictably diverged, the parties apparently agree that rulings from the Court on two related issues of law will assist them in their settlement discussions.

The Court has consistently urged the parties to work toward a negotiated resolution. In any event, molding the jury's verdict into a judgment would require the Court to resolve the same issues. Therefore, the requested rulings follow.

**I**

Addressing the parties' motions for summary judgment, the Court adopted a "pro rata" approach to the allocation of total loss across multiple policies: "[T]he Court will ask the jury to determine the total amount of covered damage and apportion that amount across triggered policies based on the time each policy was in effect, as a percentage of the total time over which covered damage occurred." *Certain Underwriters v. Nat'l R.R. Passenger Corp.*, 2017 WL 3575242, at *7

(E.D.N.Y. Aug. 17, 2017). It further held that "Amtrak's SIRs [self-insured retentions] will be included in the apportionment." *Id.* (citing *Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070, 1101-02 (Md. Ct. Spec. App. 2002)). The jury subsequently found that Amtrak incurred $14.3 million in costs to remediate third-party property damage occurring between 1972 and 1986.

## II

There is no dispute as to the amount of Amtrak's SIRs. Amtrak had an SIR of $1 million between 1972 and 1974, SIRs of $2 million between 1974 and 1985, and an SIR of $5 million between 1985 and 1986. However, the parties advocate different ways of applying the Court's allocation ruling.

The LMI say that the Court should prorate the jury's award over 14 years, for an allocated loss of $1.02 million per year. The Court should then subtract Amtrak's total SIR for each policy period. $2.04 million would be allocated to the first policy period, which ran from 1972 to 1974. Subtracting Amtrak's $1 million SIR for that period would trigger the $1 million primary layer of coverage and $40,000 of the first layer of excess coverage. $3.06 million would be allocated to the second policy period, which ran from 1974 to 1977. Subtracting Amtrak's $2 million SIR for that period would trigger $1.06 million of the primary layer of coverage. Amtrak's SIR in each remaining policy period exceeded the allocated

7

loss, triggering no coverage. The net result would be a judgment of roughly $2.1 million in Amtrak's favor.

Amtrak, meanwhile, says the period of proration should be only 13 years, for an allocated loss of $1.1 million per year. In addition, it argues that the Court should prorate *both* the jury's award and its SIRs. Finally, it argues that the two-year policy in effect from 1972 to 1974 and the three-year policy in effect from 1974 to 1977 should be treated as multiple, single-year policies with multiple policy limits and SIRs. The result would be covered losses of $1.023 million per year for two years, and of $946,000 per year for 11 years, for a total judgment of roughly $12.45 million.

Thus, the parties dispute (A) the period of proration, (B) the inclusion of Amtrak's SIRs in the proration, and (C) the effect of multi-year policy periods. The Court defers consideration of the third issue because the LMI have not yet responded to Amtrak's argument, which, in any event, is too cursory to allow the Court to make an informed ruling. The other two issues are addressed in turn.

**A. Period of Proration**

In its prior decision, the Court stated that it would ask the jury to determine "the total time over which covered damage occurred." *Certain Underwriters*, 2017 WL 3575242, at *7. The jury determined that period to be 14 years. Amtrak persuasively argues, however, that the 1985-1986 policy year should be

excluded from the denominator because those policies contain absolute pollution exclusions. Courts in both New York and Maryland have held that pro rata apportionment should not include periods when coverage is not available.

In *Stonewall Insurance Co. v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), the district court reasoned that the insured's acceptance of an asbestos exclusion was akin to a decision not to obtain coverage. *See id*. at 1203. The Second Circuit disagreed, holding that the insured was required only "to accept a proportionate share of a risk that it elected to assume." *Id*. at 1204 (emphasis added). Citing *Stonewall*, the Maryland Court of Special Appeals held that "losses will be prorated to the insured, unless a gap in coverage is due to the insured's inability to obtain insurance." *Mayor & City Council of Baltimore*, 802 A.2d at 1104.

The Court has previously explained why decisions from New York and Maryland deserve special consideration in this case. *See Certain Underwriters*, 2017 WL 3575242, at *1, *3. Since the pollution exclusions in the 1985-1986 policies do not reflect a voluntary election by Amtrak to forego coverage, that policy year will be excluded from the period of proration; the jury's damages calculation will instead be prorated over the 13-year period from 1972 to 1985.

9

## B. SIRs

"In Amtrak's view, 1/13th of the [self insured] retention applies in each year, just as 1/13th of the loss applies in each year." Letter from Rhonda D. Orin (Dec. 22, 2017) 2. But that is a false comparison. The proper comparison is between an SIR and an insurance policy. *See Stonewall Ins. Co.*, 73 F.3d at 1204 (adopting apportionment that "better comports with the principle of treating [the insured] as a self-insurer for the one year when insurance was available."). A $1 million dollar policy provides that amount of coverage for a particular period (typically one year) of the damages period, not the entire period. Similarly, a $1 million SIR for a particular year represents a decision by the insured to bear that amount of loss *for that year*. Therefore, Amtrak's per-year SIRs will not be apportioned.

## III

Apportioned over 13 years, the jury's finding of total covered damage is $1.1 million per year. Amtrak's total SIR for each year will be applied to that amount.

Although the Court takes seriously the representation that those rulings will assist the parties in their settlement negotiations, it must still proceed with the litigation. Having considered the parties' input, it adheres to its own previously expressed view that prompt appellate review of its rulings of law during the first stage of the litigation—in particular, its holding that total loss would be

10

apportioned across all triggered policies and Amtrak's SIRs—is of paramount importance because those same rulings will apply to the remaining stages. It would waste considerable time, money and effort to litigate the remaining environmental damage claims at two other sites—as well as the bodily injury claims—based on the Court's rulings, only to have the Second Circuit determine on appeal of a judgment resolving all claims that one or more of those rulings was incorrect.

The Court initially raised the possibility of certification pursuant to 28 U.S.C. § 1292(b), which authorizes an interlocutory appeal when a district court is "of the opinion that [its] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." However, "[t]he district court's order, not the certified question, is brought before the court on a § 1292(b) appeal." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 115 (2d Cir. 2004) (quoting *Moore v. Liberty Nat'l Life Ins. Co.*, 267 F.3d 1209, 1219-20 (11th Cir. 2001)). Thus, the central idea of a § 1292(b) appeal is that a different resolution of the controlling issue would lead to a different order. *See, e.g.*, *SEC v. Credit Bancorp, Ltd.*, 103 F. Supp. 2d 223, 227 (S.D.N.Y. 2000) ("In determining whether a controlling question of law exists the district court should consider whether: reversal of the district court's opinion could result in

dismissal of the action; reversal of the district court's opinion, even though not resulting in dismissal, could significantly affect the conduct of the action, or; the certified issue has precedential value for a large number of cases.").

The Court's rulings are embodied in a memorandum and order denying, with one exception, various motions for summary judgment.[1] Although those rulings later played a key part in the jury instructions and the Court's current effort to apply the jury's verdict, none of them was "controlling" in the sense that a different conclusion would have led the Court to grant the motions. In addition, while the rulings have continuing application in the litigation, the order itself has no further impact in light of the trial. Since an immediate appeal cannot forestall a trial that has already taken place, the Court is not inclined to make the necessary certification.

Federal Rule of Civil Procedure 54(b) provides another avenue for early appellate review:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.

---

[1]The Court granted, in part, the motion of four excess insurers, dismissing Amtrak's breach of contract claims against them on the ground that "there is no reasonable prospect that Amtrak's damages would reach the necessary limits" on those insurers' policies. *Certain Underwriters v. Nat'l R.R. Passenger Corp.*, 2017 WL 4221066, at *3 (E.D.N.Y. Sept. 21, 2017).

"Rule 54(b) permits certification of a final judgment where (1) there are multiple claims or parties, (2) at least one of the claims or the rights and liabilities of at least one party has been finally determined, and (3) 'there is no just reason for delay.'" *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 164-65 (2d Cir. 2005) (quoting the rule).

Resolution of stage one—that is, coverage for property damage at Sunnyside Yards—will satisfy the first requirement for certification. The Second Circuit defines a "claim" as "the aggregate of operative facts which give rise to a right enforceable in the courts." *Gottesman v. Gen. Motors Corp.*, 401 F.2d 510, 512 (2d Cir. 1968). A case presents multiple claims when each claim relies on "separate and distinct" operative facts. *Hudson River Sloop Clearwater, Inc. v. Dep't of Navy*, 891 F.2d 414, 418 (2d Cir. 1989). Therefore, "the existence of multiple claims turns on 'whether the underlying factual bases for recovery state a number of different claims which could have been separately enforced.'" *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat'l Ins. Co.*, 769 F.3d 135, 141 (2d Cir. 2014) (quoting *Rieser v. Baltimore & Ohio R.R.*, 224 F.2d 198, 199 (2d Cir. 1955)). Though the policies at issue are the same, coverage for property damage at other sites and for bodily injuries will present separate and distinct sets of operative facts as to, among other things, the cause and extent of the damage. Moreover, while the decision to litigate coverage for different types of damages at different sites in a

single case was reasonable, a claim of coverage for a particular type of damage at a particular site could undoubtedly have been separately enforced.

The third requirement is also satisfied. There is no reason to hold a determination of coverage for property damage at Sunnyside Yards in abeyance while coverage for other damages and at other sites is litigated. If Amtrak is entitled to coverage for Sunnyside Yards, it is entitled to it regardless of what happens later in the litigation. And, as previously explained, waiting until the end of the case to enter judgment runs the risk of multiple retrials. In the Court's judgment, those factors warrant a prompt resolution of stage one. *See L.B. Foster Co. v. America Piles, Inc.*, 138 F.3d 81, 86 (2d Cir. 1998) ("The determination of whether there is no just reason to delay entry of a final judgment is a matter committed to the sound discretion of the district court.").

Unfortunately, the second requirement for certification is not satisfied because the parties' respective rights and liabilities with respect to property damages at Sunnyside Yards cannot yet be finally determined. Although this memorandum and order resolves two outstanding issues, others remain. As noted, the parties disagree as to the treatment of multi-year policies. In addition, the LMI allude to unresolved issues which might further reduce their liability, including the number of occurrences causing the damage, the applicability of the policies' various pollution exclusions and possible collateral-source payments to Amtrak.

Therefore, the parties shall, by June 15, 2018, submit a joint letter outlining *all* issues—including the four mentioned in this memorandum and order—which would need to be resolved for the Court to enter a partial final judgment bringing stage one to a conclusion. The letter shall, with respect to each issue identified, set forth the parties' positions as to whether there are any disputed issues of fact requiring an evidentiary hearing. Finally, the letter should propose a schedule and page limits for a *single round* of briefing on the issues identified.

**SO ORDERED.**

/S/ Frederic Block
Frederic Block
Senior United States District Judge

Brooklyn, New York
June 1, 2018