

June 6, 2018

**VIA ECF**

Hon. Frederic Block
United States District Court
225 Cadman Plaza West
Brooklyn, NY 11201

Re: *Certain Underwriters at Lloyd's London, et al. v. National Railroad Passenger Corporation, et al.*, ECF Case 14 Civ. 4717-FB-RLM: Request for Pre-Motion Conference With Respect to Motion for Reconsideration

Dear Judge Block:

As Your Honor instructed in your Memorandum and Order of June 1, 2018 (D.E. 853), London Market Insurers ("LMI") will coordinate with Amtrak to provide the Court by June 15 a joint letter listing issues remaining for decision in Phase 1. In the meantime, LMI respectfully advise the Court of their view that the June 1 Order makes one ruling that requires reconsideration. Pursuant to LCR 6.3 and paragraph 2.A of Your Honor's Individual Motion Practices and Rules, LMI hereby request a pre-hearing conference and submit this letter explaining the basis for the anticipated motion.

The Court's June 1 Order finds that proration of property damage must exclude the 1985-86 policy period on the ground that pollution coverage was then unavailable. This ruling, LMI submit, is a *sua sponte* reversal of the Court's prior determination that allocation should include the 1985-86 period and is contrary to the March 27, 2018 New York Court of Appeals decision, *Keyspan Gas East Corp. v. Munich Reins. Am., Inc.*, 31 N.Y.3d 51 (2018), that is directly on point. *Keyspan* holds that the "unavailability rule" contradicts the "very essence of pro rata allocation." *Id* at 63. Had LMI been aware that the Court intended to rule on this issue, we would certainly have brought the decision to Your Honor's attention.

1. **The Court Previously Ruled that the Proper Proration Period Includes the 1985-86 Year.**

On summary judgment, LMI contended that Amtrak's loss must be allocated to "all years in which damage occurred," regardless of coverage (LMI's Memorandum In Support of Motion for Summary Judgment (D.E. 594_1), at 46). Amtrak admitted that pro rata allocation would require allocation to "the entire number of years of the claimant's injury" (Amtrak's Memorandum In Support of Motion for Summary Judgment (D.E 596) at 32-33). The Court duly held in its Memorandum and Order of August 17, 2017 (D.E. 751) that, once the jury had determined the "total amount of covered damage" at Sunnyside, the Court would then "apportion that amount across triggered policies based on the time each policy was in effect, *as a percentage of the total time over which covered damage occurred*." *Id.* at 21 (emphasis added).

1899 Pennsylvania Avenue, NW | Suite 600 | Washington, DC 20006 | t 202 833 8900 | f 202 466 5738

WASHINGTON  NEW YORK  LONDON  BUENOS AIRES

lbkmlaw.com



Hon. Frederic Block
June 6, 2018
Page 2

During the trial, moreover, the Court instructed the jury as follows (9/26/17 Tr., at 1531-33) based on its August 17 summary judgment ruling:

> Now, insurance policies are in effect for a limited period of time … A claim[ed] loss is covered only if it occurred during the period when the policy was in effect. *Thus, Amtrak's claim[ed] costs are covered under a particular policy only if the damage occurred while that policy was in effect. Any damage occurring before or after that period would not be covered under that particular policy*….

> Your task will be to determine when the injurious process, if any, began in this case. Thus, if you determine that each element of the insuring agreement has been satisfied, you will next be asked when Amtrak's operations first caused damage to the property of someone other than Amtrak, *and when such damage ceased*. Your answers will determine which policies will cover the loss, and it will then be my job to apportion the loss among the policies.

Pursuant to this charge, the jury determined that "covered damage" took place during a 14-year period – from 1972 to 1986 – and that the total amount of such damage was $14.3 million. The jury thus found that some portion of the $14.3 million in damage occurred in the 1985-86 period. But by now excluding that period from the allocation, the Court's June 1 ruling has the effect of reassigning the 1985-86 damage to *earlier* policy periods. Absent reconsideration, each earlier policy will be made responsible for damage that happened outside its period. And, contrary to the August 17 allocation ruling, each earlier policy period will be assigned a share of damage that is greater than its "percentage of the total time over which covered damage occurred." (D.E. 751, at 21.) The Court's June 1 ruling would thus contradict its summary judgment decision, its charge to the jury, and the jury's verdict on which LMI had a right to rely, and did rely, at trial. Most importantly, it would disregard the fundamental premise of pro rata allocation that no policy is responsible for damage that occurs outside its period.

   2.    **The Ruling is Incorrect as a Matter of Law.**

The Court's June 1 decision, which was rendered without updated briefing, did not consider the recent decision of the New York Court of Appeals in *Keyspan*, which rejects unavailability as a basis to restrict the proration period.[1] Thus, the "unavailability rule" applied in *Stonewall Insurance Co.*

---

[1] When *Keyspan* was decided in March, there was no pending motion with respect to the "unavailability" issue. While Amtrak had asked that the Court "clarify" its ruling on the separate issue of SIRs by "clarifying that the retentions are to be apportioned in the same manner as the policies" (D.E. 830, at 2), it did not seek reconsideration regarding the proration period and could not have done so under the time limitations for such a motion in LCR 6.3. *See also* D.E. 832 (December 28, 2017 letter to the Court, in which Amtrak states that "[i]ts only request – made before, during and after the [December 20] conference – has been for clarification that the SIRs should not be stacked"). The Court advised the parties in December that its next step would be to submit its prior allocation rulings as certified questions for interlocutory appeal, and the proposed questions the Court circulated on December 20 made no reference to an "unavailability" argument. Thus, neither side had any reason to call *Keyspan* to the Court's attention.



Hon. Frederic Block
June 6, 2018
Page 3

*v. Asbestos Claims Management Corp.*, 73 F.3d 1178 (2d Cir. 1995), has turned out to be a mistaken prediction of New York law. *Keyspan*, moreover, is a persuasive analysis showing that the approach is incorrect, unfair, and contrary to the purpose of pro rata allocation, which is to ensure that a policy responds only to damage that takes place during the policy period. 31 N.Y.3d at 61-63. Because *Keyspan* has rejected *Stonewall,* the discussion of "unavailability" in *Mayor & City Council of Baltimore v. Utica Mut. Ins. Co.*, 802 A.2d 1070 (Md. Ct. Spec. App. 2002), which relied on *Stonewall*, is not a reliable prediction of District of Columbia law on this specific issue, although it otherwise remains sound law.

### 3. The Ruling is Incorrect as a Matter of Fact.

The Court's ruling relies on the alleged fact that insurance for pollution losses was "unavailable" during the 1985-1986 period. But no evidence was presented on summary judgment, at trial, or at any other time to support Amtrak's untimely factual allegation of "unavailability." The presence of an "absolute pollution exclusion" in one of Amtrak's policies in a single year is not evidence that pollution coverage was completely unavailable in the insurance market as a whole. LMI respectfully submit that Amtrak could not have shown as a factual matter that pollution coverage was unavailable after 1985. It would be error for the Court to accept *ipse dixit* statements of counsel to serve as the basis to render a judgment. *See, e.g., Decker Mfg. Corp. v. Travelers Indem. Co.*, 106 F. Supp. 3d 892, 898–99 (W.D. Mich. 2015) (assuming the unavailability rule applies, insured "has not met its burden of producing sufficient evidence to create a material issue of fact" as to availability of coverage and therefore it must bear the costs allocated to years without insurance).

LMI are prepared to develop this issue with more comprehensive briefing in accordance with Local Rule 6.3 or, if the Court prefers, along with the briefing of other post-trial issues to be identified on June 15. We request the Court's instructions.

Respectfully submitted,

/s/
Joseph L. Ruby
Mark J. Leimkuhler (*pro hac vice*)

cc:  All Counsel of Record (via ECF)