June 15, 2018

**VIA ECF**

Hon. Frederic Block, U.S.D.J.
United States District Court
225 Cadman Plaza East
Brooklyn, NY 11201

> Re:  *Certain Underwriters at Lloyd's London, et al. v. National Railroad Passenger Corp., et al.*, ECF Case 14-CV-04717-FB-RLM –
> **Joint Submission Concerning Remaining Phase 1 Issues**

Dear Judge Block:

Pursuant to the Court's directive in its June 1, 2018 Memorandum and Order, the parties submit this joint letter concerning the remaining issues in Phase 1 of this litigation. Amtrak's position is set forth in Section 1 below. London Market Insurers' ("LMI") position is set forth in Section 2. The positions of Allstate Insurance Company and The Continental Insurance Company are set forth in Section 3.

**Section 1 – Position of Amtrak**

### A. Proposed Briefing Schedule

Amtrak submits the following proposed briefing schedule. It proposes that there be two sets of briefs, one filed by the Insurers and the other filed by Amtrak. Each side, the collective remaining insurers on the one hand and Amtrak on the other, file an opening brief, an opposition brief and a reply brief, for a total of six briefs filed. The briefs will be limited to the issues that need to be resolved in order for partial, final judgment as to Phase 1 to be entered. All three briefs will be filed with the Court simultaneously on September 24 in a single round of briefing. Amtrak proposes the following schedule:

  1. Opening Briefs for Cross Motions (20 page limit) on the remaining issues – to be served on all parties on August 15;

  2. Opposition Briefs to Cross Motions (20 page limit) – to be served on all parties on September 5; and

  3. Reply Briefs in Support of Motions (10 page limit) – to be served and filed on September 24.

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 2

### B. Proposed List of Issues

Amtrak submits that the following list reviews all issues that have been identified by any party as essential for this Court to enter a partial final judgment as to Phase 1 of the case under Fed. R. Civ. P. 54(b). Amtrak sets forth its position about each of these issues, stating whether or not Amtrak believes the issue is still awaiting decision.[1] In addition to these issues, Amtrak notes that it intends to submit a bill of costs for Phase 1 following the issuance of the partial final judgment.

### 1. Pollution Exclusions

The Court made clear at trial that it would decide the merits of the remaining insurers' claims that the pollution exclusion bars coverage in certain policies post-trial. The pollution exclusion appears in only some of the insurance policies that are left in this case. Several different versions of these pollution exclusions can be found in those policies. The evidence at trial showed that none of the versions bar coverage. No evidence was presented that could support the insurance companies' burden of proof on any of the versions.

In light of the prior, extensive briefing about the pollution exclusion, this Court is in a position to reach a decision about the absence of such evidence without any further briefing. Nevertheless, if the Court finds a briefing necessary, Amtrak will address these issues in full. Amtrak is not aware of any disputed issue of fact that would require an evidentiary hearing on this issue.

The insurers are incorrect in asserting, below, that a ruling on different versions of the sudden and accidental pollution exclusion is not necessary on the ground that all policies with such exclusions should be dismissed. To the contrary, several of the outstanding issues that are identified below would increase the size of the award in the partial final judgment that this Court ultimately enters and thus reach those policies. Consequently, the annual allocated share of the partial final judgment may exceed the SIR in each of those years: 1978 through 1985. Thus, a ruling on the pollution exclusion remains required.

### 2. Set-Off

The insurance companies have taken the position that set-off is an issue for the Court now to decide. Amtrak agrees, except it sees the issue differently from the insurance companies.

First, the set-off of third-party payments from APU and New Jersey Transit was a major

---

[1] In making this submission per the Court's order, Amtrak reserves all rights and waives none with regard to any prior rulings or decisions as well as any briefing or argument that follows the date of this letter, including further briefings or argument to this Court or in connection with any appeal.

issue during the trial.  Over Amtrak's objections, the Court allowed the jury to see the settlement agreements from both of these third-parties, which added up collectively to just over $12 million, while precluding Amtrak's admission of the invoices, ledgers and other payment records that proved its expenditures and adjustments.  The Court recognized and undertook to address the serious risk of jury confusion over this issue.  (*See e.g.* 9/27/17 Tr. at 1574:5–1577:7)  Still, the jury appears to have deducted the amount of those two settlements—$12 million—from the $26 million that Amtrak was seeking as damages, resulting in the $14 million verdict.

This Court has the authority to correct the error in the 54(b) judgment that it is preparing to enter.  The Court should restore to the judgment the amount of the two third-party settlement agreements.  After doing so, this Court can then proceed to address and rule on the issue raised by the insurance companies as to whether any setoff from the restored judgment is appropriate as a matter of law.

Second, the insurance companies' legal argument in favor of set-off is incorrect.  The APU settlement is not limited to Amtrak's clean-up costs at the Sunnyside Yard site;  it also encompasses APU's liability for past, present and future injury claims, including claims asserted by employees at Sunnyside Yard under the Federal Employers Liability Act ("FELA")—none of which had anything to do with the issues at trial.  It would be a legal fiction, and entirely inappropriate, for this Court to offset that settlement amount against the award in the partial final judgment that it ultimately enters.  Amtrak is prepared to brief this issue fully. Moreover, the insurers are incorrect in contending below such setoff is a factual issue for which an evidentiary hearing and further fact-finding may be required.  Amtrak is not aware of any disputed issue of fact that would require an evidentiary hearing on this issue.

          3.      <u>Costs of Cleanup Since November 2016</u>

Amtrak continues to incur costs for the investigation and cleanup of the environmental contamination at Sunnyside Yard.  The evidence presented at trial was limited by the Court's rulings to amounts incurred through November 2016.  (*See e.g.* 9/15/17 Tr. at 458:4-15). Following trial, Amtrak submitted additional costs to the insurers, but those invoices were not paid or accepted by the insurers as part of Amtrak's claim.  Amtrak accordingly proposes to submit as part of a supplemental briefing the additional, ongoing costs that should be added to the damages award.  If after review, the Court deems further evidence necessary, Amtrak is prepared to submit documentary and testimonial proof of these additional expenditures at a supplemental evidentiary hearing.

In addition, Amtrak proposes that the ongoing nature of the costs at Sunnyside Yard should be recognized as part of this Court's partial final order.  The Court should also order the insurers to reimburse Amtrak for its future costs as they are incurred.  Such an order will prevent

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 4

the Court from being asked to hold supplemental evidentiary hearings regarding further expenditures on a regular basis. Amtrak will demonstrate in the briefing other recent cases in which New York federal courts have done so to address the ongoing coverage obligations of insurance companies in environmental cleanups. As insurers contend that they have no obligation with regard to ongoing cleanup costs, this issue needs to be included.

    4.   Prejudgment Interest

  To issue a partial final judgment in this case, this Court needs to determine the exact amount of prejudgment interest that the insurance companies owe. Prejudgment interest is required as a matter of law. The insurers' contentions to the contrary, set forth below, are wrong. This legal issue can and should be resolved by this Court following a full briefing, which would include what interest rate applies.

  Calculation of prejudgment interest thus boils down to a mathematical exercise that can be resolved by this Court through this briefing. Accordingly, Amtrak proposes that each party submit its own calculation of prejudgment interest in an attachment to its briefing. The combination of the briefing and the submission of the actual calculation should enable the Court to resolve this issue and incorporate the correct amount in its partial final judgment. Amtrak is not aware of any disputed issues of fact that would require an evidentiary hearing regarding this issue.

    5.   Amounts Allocable to Each Remaining Party

  Plaintiffs LMI inexplicably contend that it is the obligation of Amtrak and this Court to figure out how much will be owed for the damage award by each individual London Market company or syndicate that agreed, internally through the London Market, to share the risk of a policy that the London Market collectively sold to Amtrak in a particular year for a single premium. Amtrak submits that it is the obligation of Plaintiffs and their counsel to figure out their respective obligations. It also is the obligation of Plaintiffs collectively and their counsel to make sure that Amtrak is paid the entire sum that is allocated to their policies once the Court enters a partial final judgment that reflects: (1) the jury verdict, adjusted to correct the improper set-off; (2) all additional sums due and owing since November 2016; and (3) prejudgment interest.

  Nevertheless, all of the pertinent evidence is readily available in the record of this case to make these calculations once the Court issues a partial final judgment setting forth the amount of the final award. Amtrak accordingly proposes that this issue be handled in the same fashion as prejudgment interest, above. In an attachment to each party's respective briefing, each party should submit its calculation of the sums due and owing thus far by the insurers that remain in

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 5

this case, with a breakdown by policy and year.  That approach will resolve all related issues that the insurers assert, including Issues No. A and No. B.5 identified by Plaintiffs LMI below.  Amtrak is not aware of any disputed issues of fact that would require an evidentiary hearing.

Having the Court address this issue is more efficient than sending it to mediation.[2]  This Court is fully able to review the submissions from each side, along with each side's explanatory briefings, and adopt the approach that the Court deems best.

### 6. Proration of Losses

LMI have argued that a case decided under New York law controls the issue of whether loss can be allocated to a policy year during which no coverage was available.  LMI contend that the Court is not permitted to allocate loss to the 1985-86 policy year under New York law, as recently set forth in *Keyspan Gas East Corp. v. Munich Reins. Am., Inc.*, 31 N.Y.3d 51 (2018).  Plaintiffs' citation to *Keyspan* is incorrect as the case is inapposite on the facts and the law.  Nevertheless, since the Court has asked the parties to include this issue on this list, Amtrak is prepared to brief it in full.  Amtrak is not aware of any disputed issues of fact about this issue that would require an evidentiary hearing.

### 7. Number of Occurrences

Whether Sunnyside Yard should be treated as a single occurrence is included by Amtrak here only because the insurance companies contend that the issue remains outstanding and needs to be decided.  Amtrak does not agree.  Amtrak's understanding, both at trial and in the subsequent review of the record, is that this Court identified Sunnyside Yard as a single occurrence at the end of trial, after reviewing the evidence and hearing argument from both parties.  That finding was inherent in the Court's decision not to put the question to the jury as a fact question.  The Court even noted that the next entity to address this question would be the Court of Appeals, on the assumption that the insurance companies intended to appeal the Court's ruling on this issue.  (9/25/17 Tr. at 1343:17-1346:19).  Amtrak submits that the identification of Sunnyside Yard as a single occurrence is correct as a matter of law.  The cases that the insurance companies have asserted to the contrary do not involve environmental sites and are inapposite.  There are enough disputes remaining for this Court to decide without revisiting this issue at this time.  That said, of course, if this Court agrees with the Plaintiffs that this issue requires further briefing, Amtrak will participate in full.  Amtrak is not aware of any disputed issues of fact that

---

[2] While Plaintiffs LMI ask this Court to direct Amtrak to participate in renewed mediation before Mr. Woodin, Amtrak respectfully refers the Court to N.3 *supra.*  While Amtrak has reached settlements with many insurance company defendants, Plaintiffs LMI have refused even to dismiss them from the case.  The track records of Amtrak and LMI with regard to settlement speaks for itself.  Accordingly, Plaintiff LMIs' request to this Court rings hollow.

would require an evidentiary hearing.

### 8. Dismissal of Parties

Continental's claim that it has been dismissed from Phase 1 and Allstate's request for an order of dismissal flags another outstanding issue regarding the dismissal of parties: the dismissal of the numerous insurance company defendants that have settled their differences with Amtrak, either in full or with regard to an agreed-upon portion of this case (the "Settled Insurance Companies"). All of these companies are identified in Footnote 2, along with the identification of whether their settlements with Amtrak were in full or in part.[3] None of those Settled Insurance Companies have been dismissed from Phase 1, however, because Plaintiffs LMI continue to assert potential claims against them. In the partial summary judgment motions prior to trial, Amtrak presented this issue and asked this Court to dismiss these Settled Insurance Companies. But that portion of Amtrak's motion has not yet been decided by the Court.

The Settled Insurance Companies can and should be dismissed from Phase 1 so that this

---

[3] The following is the list of insurance companies sued by Plaintiffs LMI with whom Amtrak has entered into settlements:

As to all claims:
Allianz Underwriters Insurance Company, f/k/a Allianz Underwriters, Inc., incorrectly sued herein as Allianz Insurance Company; Interstate Reinsurance Corporation and American Insurance Company ("Allianz")
Argonaut Insurance Company (stipulation of dismissal is expected to be filed shortly);
Banco de Seguros del Estado
Century Indemnity Company, as successor to CCI Insurance Company, as successor to Insurance Company of North America and also as successor to CIGNA Specialty Insurance Company f/k/a California Union Insurance Company ("Century")
Evanston Insurance Company;
Employers Insurance Company of Wausau f/k/a Employers Insurance of Wausau A Mutual Company and Nationwide Mutual Insurance Company ("Wausau/Nationwide")
First State Insurance Company;
Munich Reinsurance America, Inc., formerly known as American Reinsurance Company;
Nationwide Mutual Insurance Company;
Wausau International Underwriters;
TIG Insurance Company, as successor to International Insurance Company, as successor in interest to International Surplus Lines Insurance Company
Yosemite Insurance Company

As to Environmental and Non-Asbestos Injury claims:
American Home Assurance Company, The Insurance Company of the State of Pennsylvania, Granite State Insurance Company, Lexington Insurance Company, and National Union Fire Insurance Company of Pittsburgh, Pa., in its own right and as successor to Landmark Insurance Company (collectively "AIG Companies")

As to Non-Asbestos Injury claims:
The Continental Insurance Company, as successor in interest to certain policies issued by Harbor Insurance Company, and as successor by merger to Pacific Insurance Company ("Continental")

Court can enter a partial, final judgment. There is no need for further briefing on this issue, as it has been fully briefed already. Amtrak accordingly refers the Court to the briefs of all sides and asks that this Court render decision on that outstanding issue.

### 9. Allstate and Continental

Allstate is incorrect that a *pro rata* allocation of this Court's partial final judgment could not possibly reach the coverage that Allstate sold to Amtrak for policy years 1974-75, 1975-76 and 1976-77. The attachment point for Allstate in each of those years is $10 million. When prejudgment interest is included, and the set-off issue addressed, and other costs addressed, the size of the award in the partial final judgment that the Court ultimately issues may exceed $10 million in each of those years. Allstate's policy could also be reached in each of those years if an all sums allocation ruling results from the upcoming certification of the allocation issues to the Second Circuit.

Continental is similarly incorrect that it has been dismissed already. The Court only dismissed Amtrak's breach of contract claim against Continental, but Continental remains in the case with regard to Amtrak's declaratory judgment claim and all of the claims asserted against it by Plaintiffs LMI. One of Continental's policies is in the same layer as Allstate's policies (excess of $10 million) so, for the same reasons as set forth above with regard to Allstate, Continental should not be dismissed.

### 10. Attorneys' Fees and Costs

The partial, final judgment needs to address attorney fees and costs incurred by Amtrak in Phase I and that Amtrak now is entitled to recover from Plaintiffs LMI as the prevailing defendant in LMI's declaratory judgment action. That judgment should deny Plaintiffs LMI's request for a declaration of no coverage for Amtrak's claims in Phase 1 and declare instead that there is coverage for those claims. Because Amtrak established coverage in this declaratory judgment action that was filed against it by its third-party liability insurance companies, Amtrak is entitled to its fees and costs as a matter of law. This is a recognized exception to the American Rule on fee shifting and is not dependent on proof of bad faith. As a separate basis for a fee award, Amtrak also is entitled to attorneys' fees and costs as consequential damages. Amtrak proposes to brief its right to recover these fees and costs, which briefing will include an attachment setting forth the fees and costs that it is seeking to recover.

**Section 2 – Position of London Market Insurers[4]**

A.   **Policies Remaining in Phase 1.**

Under the Court's rulings applying pro rata allocation and full SIRs, those LMI subscribing to policies incepting in June 1977 or later, and higher-layer policies in earlier years, will be entitled to judgment dismissing all Phase 1 claims against those policies. This is because the jury verdict amount of $14.3 million less any post-trial reductions will be allocated across either 13 years or 14 years, depending on the how the Court rules on LMI's request for reconsideration of its June 1 ruling concerning the "unavailability" rule. Under either proration period, the yearly damage subject to allocation will not exceed the SIR of any policy incepting in or after 1977. The outstanding Phase 1 issues therefore concern only three policies in effect in two earlier policy periods: (i) a first-layer excess policy and a second-layer excess policy in effect for a two-year period from 1972 to 1974; and (ii) a first-layer excess policy in effect for a three-year period from 1974 to 1977. The resolution of the remaining Phase 1 issues cannot change the outcome that as to Sunnyside, no coverage will be owed by any higher-layer policies in those periods, or by any later policies. Thus, no issues specific to those higher-layer and later policies need be decided in order for the Court to enter a partial final judgment declaring, as LMI have requested, that LMI will owe Amtrak no coverage under those policies for Sunnyside damage.

B.   **Issues remaining in Phase 1.**

LMI identify below the following issues that remain unresolved in Phase 1. For the Court's convenience, LMI address these issues in the same order as does Amtrak. As noted below, certain of these issues have or may become moot with respect to the Sunnyside claim based on the Court's rulings to date and/or its determination of other issues.

1.   **Application of pollution exclusions.**  The Court made certain rulings on September 21, 2017 regarding the legal interpretation of pollution exclusions in most Amtrak policies – most notably that a "sudden" discharge for purposes of an exception to most of the exclusions requires a discharge brought about abruptly, precipitately, or in a short time. With the consent of the parties, the Court decided that after the jury trial it would apply the law to the facts adduced at trial to resolve how the pollution exclusions will apply at Sunnyside. London policies incepting in June 1977 and later (and certain higher-layer policies issued by other insurers in earlier periods) have such exclusions. LMI submit that the evidence shows that the contamination at Sunnyside resulted from discharges that were either not sudden, not accidental, or both, and that the pollution exclusions preclude coverage at Sunnyside Yard under the policies that contain them. However, based on the Court's prior rulings on pro rata allocation and the application of full SIRs, none of the policies that contain pollution exclusions will be allocated a share of Sunnyside damage, whether or not those exclusions apply. The three policies remaining

---

[4] LMI and the other insurers do not attempt to correct every misstatement Amtrak makes in its section, and therefore the absence of such a correction should not be read as agreement.

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 9

in Phase 1 have no pollution exclusions and no ruling on the pollution exclusion in other policies can have any effect on a Phase 1 judgment. Therefore, the Court need not address the issue of application of the pollution exclusions in order to enter a partial final judgment in Phase 1, and thus the issue need not be included in the upcoming post-trial briefing. In the event the Second Circuit were to later reject the Court's allocation and SIRs rulings on appeal and remand to this Court for further proceedings, LMI reserve the right to address the issue on remand.

   2. **Setoff of recoveries Amtrak received from APU.** The Court held that the $9.322 million in recoveries that Amtrak obtained from American Premier Underwriters ("APU") – an $8.6 million settlement payment plus $722,000 in earlier payments for Sunnyside remediation – would be addressed as an "equitable adjustment" by the Court rather than submitted as a factual issue to the jury. (September 21, 2017 Memorandum and Order (D.E. 799), at 9-11.) Amtrak's contention that, in violation of the Court's specific instructions, the jury "appears" to have already deducted this amount in reaching its $14.3 million verdict is utter fiction. The Court twice instructed the jury not to apply a setoff in determining its verdict amount, and the jury sent a note to the Court during its deliberations specifically acknowledging that the jury understood the Court's limiting instruction. (6/15/17 Transcript at 483:2–25; 6/27/17 Transcript at 1575:11–1576:22; Court's Exhibit No. 6.) Thus Amtrak now contends for the first time, more than eight months after trial, that the jury intentionally defied the Court's instructions. There is no support for this assertion. LMI submit that the Court should apply a setoff in the amount of the APU payments against the $14.3 million amount of the jury verdict in order to prevent a double recovery by Amtrak. The setoff is appropriate as a matter of law and on the basis of facts that are not in genuine dispute. If Amtrak were to demonstrate the existence of a genuine issue of fact concerning the setoff issue, an evidentiary hearing and further fact-finding may be required.

   3. **Cleanup costs since November 2016.** LMI dispute Amtrak's contention that it is entitled to a judgment for cleanup costs incurred after November 2016. First, the Court never imposed a November 2016 cutoff date for evidence of damages at trial. (Amtrak's citation to the trial record does not support its contention to the contrary.) Indeed, Amtrak was permitted to and did alter its damage claim repeatedly in the immediate run-up to and during trial. Second, this is not an issue for post-trial briefing. Absent agreement of the parties, the amount of any costs incurred by Amtrak since the September 2017 jury trial, and whether such costs are recoverable from the insurers, including whether LMI's various defenses to coverage will apply to such costs, will raise an issue of fact that would require further proceedings. Depending on the Court's judgment following resolution of the issues addressed herein, however, it is highly likely that under pro rata allocation and application of full SIRs these later costs will not reach any of the policies' attachment points and such further proceedings will become unnecessary.

   4. **Prejudgment interest.** LMI contend that prejudgment interest is legally unwarranted in these circumstances under applicable District of Columbia law. In any event, prejudgment interest will not apply if, after resolution of the other post-trial issues, the allocation results in no award against LMI. If the Court were to determine that Amtrak may lawfully pursue an award of interest as a post-trial matter, then the Court would have to hold an

evidentiary hearing as to the quantum. LMI submit that Amtrak's proposal that in their respective briefs each party present a calculation of prejudgment interest is unworkable. Even if the Court were to determine that prejudgment interest could lawfully be sought by Amtrak at this time, the amount of an award, if any, subject to interest could not even be determined until the issues listed here are resolved by the Court.

**5.   Amounts allocable to individual insurers.** In the event the resolution of these post-trial issues results in any amount of damage exceeding the SIRs for any policies, the Court would need to determine the monetary amounts that are the responsibility of individual insurers, each of which severally subscribed to a percentage of one or more policies and is not responsible for any percentage subscribed to by any other insurer. (Any suggestion by Amtrak that any individual LMI is responsible for a percentage share owed by another insurer is flatly contrary to the policies' terms.) LMI submit that, once the Court resolves these post-trial issues and determines whether any gross amount is allocable to particular policy layers, the parties should be able to work together to agree on the calculations necessary to determine any amount for which an individual insurer may be responsible. The Court may wish to delegate to Peter Woodin (serving in a special master capacity) the task of overseeing that process and to issue a report and recommendation on any amounts to be apportioned to individual insurers on which the parties cannot agree. (Prior to the jury trial LMI sought to negotiate with Amtrak a stipulation to address individual insurers' percentage shares and other policy terms and conditions, but without success.) If the Court does not wish to delegate that matter to a special master and the parties cannot agree on several percentage shares subscribed by individual insurers, then an evidentiary hearing on the issue may become necessary. Again, Amtrak's proposal that the parties include in their briefs a calculation of individual insurer shares is unworkable because the amounts to be allocated among the insurers, if any, have yet to be determined.

**6.   Proration period.** In their June 5, 2018 letter (D.E. 854), LMI sought reconsideration of the Court's June 1 ruling that the 1985-86 policy period is excluded from the proration period because, allegedly, pollution coverage was unavailable at that time. The Court's June 11, 2018 Order directed that this issue be included among the remaining Phase 1 issues to be resolved. If the Court rejects the "unavailability rule" in accordance with the New York Court of Appeals' recent *Keyspan* decision, no fact-finding by the Court on the proration period would be necessary. If the Court were to apply the "unavailability rule," however, it would need to determine as a factual matter whether Amtrak met its burden during the Phase 1 trial to prove that no pollution coverage was available in the insurance marketplace in the 1985-86 period. LMI submit that Amtrak cannot meet that burden.

**7.   Number of occurrences.** The policies provide insurance for covered losses on a "per occurrence" basis. Thus, both the SIRs and the limits apply "per occurrence," such that each separate occurrence triggers a separate SIR and a separate limit in each policy period. Accordingly, to determine the amount of any insurance recovery for Sunnyside remediation costs the trier of fact must determine the number of occurrences at Sunnyside that gave rise to the environmental damage to third-party property. The number and nature of each occurrence is

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 11

a highly fact-specific question. LMI dispute Amtrak's assertion that the Court has already ruled that Sunnyside damage arose from a single occurrence. Over the insurers' objection, the Court determined that the jury would not consider the number of occurrences but instead the Court would evaluate the evidence and rule on the issue after the trial. (9/25/17 Transcript at 1346:23-1347:24.) Amtrak's citation to the trial record does not include this portion of the Court's colloquy with counsel on this issue. To determine the number of occurrences will require the Court to make findings concerning what separate causes of damage took place at Sunnyside and thus constitute separate occurrences, and then apply the policy limits and underlying SIRs to each such event in each policy period. LMI contend that the evidence demonstrates that the Sunnyside environmental damage arose from multiple occurrences under the policies, each requiring application of a separate SIR in each policy period, with the result being that there is no amount owing under any policy.

8.    **Dismissal of parties.**  Under the Court's ruling that pro rata allocation applies, LMI can have no recovery from any other insurers – including although not limited to those which have settled with Amtrak – with respect to covered damage at Sunnyside Yard. It would therefore be appropriate for such claims against other insurers concerning Sunnyside Yard to be dismissed without prejudice as moot and subject to reinstatement if the allocation ruling is reversed or amended. However, Amtrak's statement in section 5 that it is "the obligation of Plaintiffs collectively … to make sure that Amtrak is paid the entire sum that is allocated to their policies" introduces an ambiguity in that certain policy layers have participation by insurers that have settled with Amtrak. If Amtrak is asserting that LMI must pay amounts that would have been allocated to insurers that have settled, then those insurers should not be dismissed.

9.    **Allstate and Continental.**  Section B.9 of Amtrak's statement of position is addressed by Allstate Insurance Company and Continental Insurance Company in Section 3 below.

10.    **Attorneys' Fees and Costs.**  The American rule that parties must bear their own fees and costs applies to this matter, and Amtrak is mistaken in its contention to the contrary. Nor is Amtrak entitled to recover fees or costs as consequential damages. In any event, LMI prevailed on their assertion that dozens of insurance policies owe Amtrak no coverage and Amtrak may prevail, if at all, with respect to only three such policies and as to only a fraction of the amounts it demanded. Thus, even if an exception to the American rule were applicable in a coverage action of nature, Amtrak would not be entitled to any of its fees and costs in the circumstances of this case.

C.    **Schedule for Briefing Remaining Issues.**

LMI submit that briefing and resolution of the above remaining Phase 1 issues should take place, if at all, only after the parties have pursued further settlement discussions. LMI are prepared to engage in such discussions with Amtrak, with Peter Woodin serving as mediator.

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 12

1.      **Resumption of mediation.**  As the Court is aware, Amtrak earlier opposed Your Honor's suggestion that Amtrak and LMI could better assess their litigation risks and engage in more meaningful settlement negotiations if allocation-related issues were certified to and resolved by the Second Circuit in an interlocutory appeal.  Instead, Amtrak insisted that "clarification" by this Court of its ruling on SIRs would more quickly and efficiently position the case for settlement than an interlocutory appeal.  *See* Amtrak December 22, 2017 Letter (D.E. 830) at 2.)  The Court has now issued that "clarification."  LMI therefore request that, before briefing and resolution of the remaining post-trial issues, LMI and Amtrak be directed to resume settlement discussions with the assistance of Mr. Woodin and that briefing be postponed for a period of 45 days so they can focus on those discussions to see if they can now produce a settlement.

2.      **Briefing schedule.**  If the parties are unable to reach a negotiated compromise, LMI propose that the parties file briefs not exceeding 50 pages in length, exclusive of exhibits, on the remaining Phase 1 issues on August 30, 2018.  The briefs should identify any factual issues as to which a party asserts there is a genuine dispute for which additional evidence and/or fact-finding will be required, so the Court can set an appropriate schedule for any necessary evidentiary hearing on such matters.  This proposal complies with the Court's direction that the parties propose a "single round" of briefing.  LMI have no objection, however, to Amtrak's proposal of the usual three briefs – opening, opposition, and reply – as this would allow more cogent responses to the opposing party's arguments.  If the Court agrees to three rounds of briefs and assuming briefing is deferred to allow for resumption of mediation, LMI submit that the schedule and page limits for such briefing should be as follows: (1) opening briefs (35 pages) on August 15, (2) opposition briefs (20 pages) on August 30, and (3) reply briefs (15 pages) on September 15.

**Section 3 – Positions of Allstate and Continental**

The Court granted summary judgment on September 21, 2017 dismissing Amtrak's breach of contract claims against Continental.  As a result of this ruling and the Court's other rulings to date relating to Sunnyside, Continental submits that no issue specific to any Continental policy need be addressed by the Court at this time prior to entry of a partial final judgment in Continental's favor declaring that Continental does not owe Amtrak any coverage under any Continental policy as to Sunnyside.  Amtrak, despite the prior dismissal of the breach of contract claim against Continental, now asserts for the first time that it will attempt to *de facto* overturn the summary judgment ruling by arguing that a Continental policy somehow can be reached after all, by calculating prejudgment interest on the entire jury award and adding alleged subsequent expenses not presented to the jury.  Amtrak's argument is wrong as a matter of law, and Continental will respond to any such argument in the post-trial submissions. Continental also expects to join or advance arguments briefed by LMI concerning the proration period, the APU setoff, and the number of occurrences.  In addition, all of the Continental policies, issued to Amtrak from 2/22/74 forward, contain sudden and accidental pollution exclusions that Continental submits preclude any coverage.  Continental agrees with LMI that the Court need not address the issue of application of the pollution exclusions in order to enter a partial final

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 13

judgment in Phase 1. However, Continental's post-trial submission will address any arguments presented by Amtrak on the subject.

Allstate Insurance Company, Solely as Successor in Interest to Northbrook Excess & Surplus Insurance Company, formerly Northbrook Insurance Company ("Allstate"), is entitled to a judgment dismissing with prejudice all remaining Phase 1 claims. Allstate issued two policies to Amtrak: (1) Policy No. 63-000352, effective June 1, 1974 to June 1, 1977,[5] which is a quota share excess subscription policy that participates in the third layer of excess insurance that attaches excess of $10 million "ultimate net loss," and (2) Policy No. 63- 008782, effective June 1, 1982 to June 1, 1983, which is a quota share excess policy that participates in the fourth layer of excess insurance that attaches excess of $60 million "ultimate net loss." Regardless of how the Court resolves the remaining Phase 1 issues, no coverage will be owed under these high level excess policies because the jury verdict amount, when allocated on a pro rata basis, will not exceed the SIR's or underlying insurance in the Allstate policy periods. Indeed, during the Phase 1 trial, Your Honor dismissed Amtrak's breach of contract cause of action because the Allstate policies were not impacted by the Sunnyside Yard damages.

The only remaining Phase 1 cause of action against Allstate is Amtrak's cause of action for declaratory relief. However, Amtrak's counsel admitted at trial that the remediation at Sunnyside Yard is virtually complete. Accordingly, there is no reasonable scenario where Amtrak's damages will implicate Allstate's third or fourth layer excess policies and Allstate is entitled to a dismissal with prejudice of all remaining causes of action with respect to Phase 1.

Finally, Allstate also intends to respond to any arguments made by Amtrak regarding the calculation and application of pre-judgment interest and other costs in order to somehow reach the 1974-1977 Allstate policy and reserves its rights to join or advance arguments raised by LMI or Continental including, but not limited to, arguments regarding the proration period, the number of occurrences, and the APU setoffs.

Respectfully submitted,

By: _____/s/_____
Joseph L. Ruby
Mark J. Leimkuhler (*pro hac vice*)
Aisha E. Bembry (*pro hac vice*)
**LEWIS BAACH KAUFMANN MIDDLEMISS PLLC**
1899 Pennsylvania Avenue, NW, Suite 600
Washington, DC 20006
Tel: 202-833-8900
Fax: 202-466-5738

---

[5] Allstate submits that the policy language of the 1974-1977 policy unambiguously provides for one per occurrence SIR and one per occurrence limit over the three year term of the policy.

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 14


The Chrysler Building
405 Lexington Avenue, 62nd Floor
New York, NY 10174
Tel: 212-826-7001
Fax: 212-826-7146
*Counsel for London Market Insurers*


By: _____/s/_____
Rhonda D. Orin
Daniel J. Healy
Stephen D. Palley
**ANDERSON KILL, L.L.P.**
1717 Pennsylvania Avenue, N.W.
Washington, DC  20006
Telephone:  202-416-6500


Vivian C. Michael
John M. Leonard
**ANDERSON KILL P.C.**
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000
*Attorneys for Defendant National Railroad Passenger Corporation*



By: _____/s/_____
John S. Favate
Arthur A. Povelones
**HARDIN, KUNDLA, McKEON & POLETTO**
673 Morris Avenue
Springfield, NJ. 07081 (973) 912-5222
*Attorneys for Defendant The Continental Insurance Company*

Hon. Frederic Block, U.S.D.J.
June 15, 2018
Page 15


By:   /s/
Lawrence A. Levy
Michael A. Kotula
**RIVKIN RADLER LLP**
926 RXR Plaza
Uniondale, NY  11556-0926
*Attorneys for Allstate Insurance*
*Company solely as successor in interest to Northbrook Excess and Surplus Insurance Company, formerly Northbrook Insurance Company, sued incorrectly herein as Allstate Insurance Company and Northbrook Insurance Company*